**LEBANON VALLEY FARMERS BANK, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 2009.

Decided Aug. 4, 2011.

Robert P. Harrill, Jr. and Michael J. Semes, Philadelphia, for petitioner.

John J. Butchar, Senior Deputy Attorney General, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY President Judge LEADBETTER.

Lebanon Valley Farmers Bank (Farmers Bank) has filed exceptions to this court's opinion and order affirming the Board of Finance and Revenue's (Board) denial of its petition for a refund of a portion of the Bank and Trust Company Shares Tax (Shares Tax)[1] it paid for the 2002 tax year.

Although we provided a general overview of the Shares Tax in our underlying opinion,[2] for purposes of the instant excep-

---

1. The tax commonly referred to as the "Bank and Trust Company Shares Tax" or "Shares Tax" is set forth in Article VII of the Tax Reform Code (Tax Code). *See* Sections 701 through 706 of the Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7701—7706.

2. *Lebanon Valley Farmers Bank v. Commonwealth*, 965 A.2d 1249 (Pa.Cmwlth.2009) (*Leb-*

tions, it is helpful to again note that the Shares Tax is imposed on the "taxable amount" of a banking institution's shares of capital stock. Section 701 of the Shares Tax, 72 P.S. § 7701. Although intended to tax current value, in order to mitigate the effect of year to year fluctuations, the statute mandates in Section 701.1(a),[3] 72 P.S. § 7701.1(a), that the taxable amount of shares is based upon an average share value, which is determined using the current year share value and the share values for the preceding five years. Specifically, Section 701.1(a) provides:

> The taxable amount of shares shall be ascertained and fixed by adding together the value determined under subsection (b) for the current and preceding five years and dividing the resulting sum by six. If an institution has not been in existence for a period of six years, the taxable amount of shares shall be ascertained and fixed by adding together the values determined under subsection (b) for the number of years the institution has been in existence and dividing the resulting sum by such number of years.

Ordinarily, this averaging method serves its purpose well. However, the averaging provision, standing alone, would produce skewed results where two banks have merged. This is because after the merger the surviving institution has a greater value than it had standing alone before the merger (to oversimplify, it now has the combined value of the two banks). However, this greater value—the actual value intended to be taxed—is diluted by application of six-year averaging because the prior years' values of the surviving institu-

tion do not include the value of the merged institution. The amount of lost value decreases each year, but for a six year period less than the full value of the combined surviving institution would be subject to tax and it would pay less than its fair and intended share. To prevent this dilution of value after a merger, Section 701.1(c)(2), often referred to as the "combination provision," provided at all times relevant here:

> [T]he combination of two or more institutions into one shall be treated as if the constituent institutions had been a single institution in existence prior to as well as after the combination and the book values and deductions for United States obligations from the Reports of Condition of the constituent institutions shall be combined. For purposes of the preceding sentence, a combination shall include any acquisition required to be accounted for by the surviving institution under the pooling of interest method in accordance with generally accepted accounting principles or a statutory merger or consolidation.

72 P.S. § 7701.1(c)(2). In accordance with the intended statutory purpose, the Department historically applied the combination provision to all post-merger institutions and all were taxed at full value.[4]

However, the Shares Tax is imposed only upon "institutions," which are defined to include, *inter alia,* "[e]very bank operating as such and having capital stock which is incorporated under any law of this Commonwealth, under the law of the United States or under the law of any other jurisdiction and is located within this Common-

---

*anon Valley* ).

**3.** Section 701.1 was added by the Act of December 17, 1982, P.L. 1385. As noted in our earlier opinion, Section 701.1 was amended by the Act of July 25, 2007, P.L. 373; those amendments are not relevant here.

**4.** As is explained more fully below, results would still be skewed where one of the merger partners was fewer than six years old, but it is not clear whether such a merger occurred during the relevant time period. At all events, that situation is not involved here.

wealth." Section 701.5,[5] 72 P.S. § 7701.5. Thus, an out-of-state bank without any contacts with the Commonwealth is not an "institution" for purposes of the Shares Tax. *Lebanon Valley Farmers Bank v. Commonwealth,* 965 A.2d 1249 (Pa. Cmwlth.2009) (*Lebanon Valley* ). Therefore, in *First Union National Bank v. Commonwealth,* 867 A.2d 711 (Pa. Cmwlth.), *exceptions dismissed,* 885 A.2d 112 (Pa.Cmwlth.2005), *aff'd,* 587 Pa. 507, 901 A.2d 981 (2006), this court held that, under the plain language of the statute, the combination provision applies only where two institutions, *i.e.,* two Pennsylvania banks, have merged. Thus, the appellant in *First Union* and others similarly situated, *i.e.,* where the surviving institution has merged with an out-of-state bank, was able to take advantage of the temporarily diluted values resulting from six-year averaging without the value recapture of the combination provision.[6]

In the underlying appeal in this case, Farmers Bank raised a constitutional challenge to use of the combination provision to calculate its Shares Tax, contending that because the provision applied only to institutions that had merged with another institution subject to the Shares Tax but not to institutions that had merged with out-of-state entities not subject to the tax, application of the combination provision violated both the Uniformity Clause[7] and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[8] Based upon the Commonwealth's explanation of how share value is calculated when an institution merges with an out-of-state entity, we concluded that Farmers Bank failed to demonstrate discriminatory tax treatment and affirmed the denial of the requested refund.[9]

---

5. Section 701.5 was added by the Act of June 16, 1994, P.L. 279.

6. In *First Union,* this court stated, "because South [B]ank had no tax contacts with Pennsylvania before the merger and, so, was not an 'institution' and, thus, not subject to the Shares Tax, its pre-merger, six-year average value cannot be included in North Bank's 1999 six-year average value to compute North Bank's 1999 Shares Tax liability." 867 A.2d at 716 (footnote omitted).

7. Article VIII, section 1 of the Pennsylvania Constitution provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

8. Here, two Pennsylvania institutions, Lebanon Valley National Bank and Farmers Trust Bank merged in 1998, with the resulting institution adopting the name Lebanon Valley Farmers Bank (Farmers Bank). Farmers Bank calculated its 2002 Shares Tax utilizing the combination provision such that the historical book values of both institutions were combined. Thereafter, Farmers Bank sought a refund based upon this court's decision in *First Union National Bank v. Commonwealth,*

867 A.2d 711 (Pa.Cmwlth.), *exceptions dismissed,* 885 A.2d 112 (Pa.Cmwlth.2005), *aff'd,* 587 Pa. 507, 901 A.2d 981 (2006) (holding that, the merger of an institution with an out-of-state bank did not constitute the "combination of two or more institutions" for purposes of the "combination provision" and, therefore, the Department erred in determining tax liability by including the pre-merger share values of the out-of-state entity). Based on *First Union,* Farmers Bank sought to exclude the premerger value of Lebanon Valley National Bank from the calculation of its tax base.

9. Specifically, we noted:

[T]he proper treatment of the merger of an in-state institution and an out-of-state bank for share[s] tax purposes combines the six-year average value of the in-state institution with the post-merger value [10] of the out-of-state bank. Thus, it taxes the full value of the current year's shares of the merged entity, but avoids any potential commerce clause issues. Thus understood, it becomes clear that use of only the post-merger share value of an out-of-state entity for purposes of the combination provision is revenue neutral. That is, it may be either advanta-

In its exceptions, Farmers Bank contends that this court, in essentially concluding that a tax advantage does not occur when an institution merges with an entity not previously subject to the Shares Tax (as compared to the calculation of share value for two institutions that have merged), misunderstood the calculation of share value required by the combination provision, this court's decision in *First Union* and the parties' stipulations in this case.

While neither the statute nor *First Union* makes clear the manner in which the taxable amount of shares is to be calculated under Section 701.1(a) when an institution merges with a non-institution (or an institution in business less than six years), the Commonwealth, now admitting that its prior explanation to the court was incorrect, concedes that the averaging methodology of subsection (a) will in certain circumstances, as described above, temporarily render an artificially low share value. Specifically, the Commonwealth avers:

> [I]t must be noted that the Commonwealth's position regarding the calculation of Shares Tax value for merged institutions under the Combination Provision of the Shares Tax has changed. Following the prior argument and the Court's initial decision in this matter, Commonwealth's counsel had additional discussions with petitioner's counsel and revisited the mechanical calculation of the Shares Tax value under various scenarios with personnel in the Department's Corporate Tax Bureau.

> Counsel for the Commonwealth has been able to identify two scenarios under which the practical effect is to include zeros in all or part of the history of value of one of two merging banks under the Combination Provision.

> The first scenario is the one represented by the First Union decision and raised as the comparative calculation by petitioner's counsel in this matter, wherein this Court excluded the value of an out-of-state bank from the history of value when it merged into an in-state bank. Commonwealth's counsel previous review of the *First Union* decision, the stipulated facts in that matter, and First Union's stated position as to the correct calculation did not lead Commonwealth's counsel to the conclusion that the effect of the decision was to compel a calculation which diluted Shares Tax value going forward after a merger through the inclusion of zeros in one side of the value history. However, Commonwealth's counsel is now convinced that this was the practical effect of the *First Union* decision.

> The second scenario which causes a diluted Shares Tax value is the situation when two domestic institutions merge and one has been in existence for less than six years and for less time than its merging partner. This also creates ... "lost value" under the calculation.

> In both of these situations, the disparities created by the calculation are solely attributable to the use of historic values in the calculation. With the

---

geous or disadvantageous to the taxpayer depending upon whether the value of the out-of-state bank has increased or decreased over the six-year period ending with the merger year.
[FN10] This will be the current value in the merger year, a two-year average in the second year, and so on. Essentially, the

out-of-state bank is treated in the same manner as an institution that has not been in existence for six years. *See* Section 701.1(a). It will not be a six-year average in which the value of the out-of-state bank is counted as $0 for pre-merger years.

*Lebanon Valley*, 965. A.2d at 1253.

merger of any two banks or institutions whether in-state or out-of-state, ... there would be no lost value, no potential uniformity problem if merging banks or institutions were treated as new institutions, with combined values divided by one. Going forward, the entity would average its value for the number of years in existence since the merger, in the same manner as any other single institution, but without the use of any premerger history.

Commonwealth's appellate brief at 9–10 (footnote omitted) (emphasis added).[10]

Notwithstanding the above concession regarding the manner in which the Department calculates the taxable amount of shares under Section 701.1(a), the Commonwealth suggests that such treatment does not violate the Uniformity Clause because "the disparities and any inequalities" resolve themselves over time and such disparities fall within the normal range of disparities occasioned by the use of the averaging methodology. The Commonwealth also suggests that if the court should find that the "inequality rises to the level of a constitutional uniformity violation:"

> [The] Court must invalidate the use of historic values in determining the current Shares Tax value of a surviving bank from a merger. The value of the two banks will be combined and no divisor (other than one) is necessary. The bank must be treated as a new bank, and it will then use the regular averaging formula provided for single institutions going forward.
>
> . . . .
>
> The mischief that occurs in the calculation of the value of combining banks

occurs only in the use of historical values. Sever that history from the calculations and the calculated value achieves perfect uniformity. Tax the full value of each merging bank in the year of a merger and thereafter as originally intended by the Legislature.

*Id.* at 15, 16.

Therefore, at this juncture, the parties agree that, following this court's decision in *First Union,* the statutory scheme produces a tax advantage to a Pennsylvania institution which has merged with an out-of-state bank, while the surviving entity of the merger of two institutions, like Farmers Bank, has no such advantage (unless it has merged with an institution fewer than six years old). The parties' current dispute is twofold: First, of course, is that Farmers Bank argues that this discrepancy creates a lack of uniformity, while the Department argues that it does not. Second, assuming that this court should find a lack of uniformity, Farmers Bank asserts that the proper remedy is to sever the combination provision in Section 701.1(c)(2), which would result in its receiving the same favorable tax treatment as if it had merged with an out-of-state bank. The Department argues, on the other hand, that any constitutional infirmity can be cured by a limited severance of the historical calculation provision of Section 701.1(a). We now turn to resolution of these disputes.

 It is well settled that in order for a tax to be considered uniform, it must be applied with "uniformity upon similar kinds of businesses or property with substantial equality of the tax burden on all members of the class." *Fidelity Bank,*

---

**10.** The Commonwealth has provided examples of the average share value calculation for an institution merging with different types of entities, such as an out-of-state entity (the *First Union* scenario), or another institution that has been in existence for less than six years. *See* appendices to Commonwealth's appellate brief.

*N.A. v. Commonwealth,* 165 Pa.Cmwlth. 524, 645 A.2d 452, 458 (1994). Therefore, when the formula or method used to calculate the tax will, in its operation or effect, result in arbitrary, unjust or unreasonably discriminatory results, the requirement of uniformity has been violated. *Id.* at 459.

■ Here, after a review of the statutory scheme and a more accurate understanding of the manner in which the Department calculates the tax base when an institution merges with or acquires another entity (whether or not defined as an institution), we conclude that a lack of uniformity has been established. While, as the Commonwealth argues, the disparity is eventually dissipated, the lost value during the first few post merger years, and the tax which should have been paid on those values, is never recovered.

That said, we do not agree with Farmers Bank that this lack of uniformity dictates that we sever the combination provision for all institutions, or all surviving institutions following a merger. The lack of uniformity is not due solely to application or non-application of the combination provision. As is explained above, and as the Commonwealth now concedes, the lack of uniformity occurs when the combination provision is coupled with the use of an average share value. When an institution has merged with or acquired either a non-institution or an institution that has been in existence for fewer than six years, the averaging methodology results in an artificially low tax base post-merger, that is, it produces an average share value for the combined entity that is not an accurate reflection of the average value of the entity's taxable amount of shares calculated pursuant to Section 701.1(b) [providing manner in which value for each year required by Section 701.1(a) shall be determined].[11] The share value of the surviving (combined) institution in these circum-

---

11. To illustrate, the following tables provide an overly simplified comparison of the present (post-*First Union*) method of calculating the average share value which: (1) results from the merger of two institutions, each in existence for at least six years; (2) results from the merger of an institution with a six-year history with another institution that has been in existence for only four years; and (3) results from the merger of an institution with an entity not previously subject to the Shares Tax.

1. Two institutions (A and B), each in business for six years, merge in Year X:

| YEAR | SHARE VALUE OF INSTITUTION A | SHARE VALUE OF INSTITUTION B | COMBINED VALUE OF AB |
|---|---|---|---|
| X–5 | 30 | 30 | 60 |
| X–4 | 30 | 30 | 60 |
| X–3 | 30 | 30 | 60 |
| X–2 | 30 | 30 | 60 |
| X–1 | 30 | 30 | 60 |
| X | 30 | 30 | 60 |
| Total value for current year and preceding 5 years divided by 6 = share value to be taxed in current year | | 360 ÷ 6 = 60 | |

2. Two institutions (C and D) merge in Year X, one of which (D) has been in existence for only four years:

stances is temporarily diluted in the year of the merger and in as many as the following five years because, contrary to our original understanding, use of an average share value effectively assigns a premerger value of zero to the non-institution or to the institution with a shorter existence for those years it was not in business. Thus, as Tables 2 and 3 in footnote 11 demonstrate, when an institution with an average premerger share value of 30 mergers with either (1) an institution that has been in existence for fewer than six years and has an average premerger share value of 30, or (2) a non-institution with a premerger share value of 30, it will have a lower tax base post-merger than an identical institution that merges with another institution in existence for at least six years with the same average premerger share value of 30. Thus, while the true share value of the new entity in scenarios two and three may be 60, use of a historical share value dilutes the average share value and the resulting institution is effectively taxed as if it had a lower tax base.

| YEAR | SHARE VALUE OF INSTITUTION C | SHARE VALUE OF INSTITUTION D | COMBINED VALUE OF CD |
|---|---|---|---|
| X–5 | 30 | | 30 |
| X–4 | 30 | | 30 |
| X–3 | 30 | 30 | 60 |
| X–2 | 30 | 30 | 60 |
| X–1 | 30 | 30 | 60 |
| X 30 | 30 | 60 | 60 |
| Total value for current year and preceding 5 years divided by 6 = share value to be taxed in current year | | | $300 \div 6 = 50$ |

3. An institution (E) merges in Year X with an entity (F) not subject to the Shares Tax; the share value of F for the five years preceding Year X was 30:

| YEAR | SHARE VALUE OF INSTITUTION E | SHARE VALUE OF ENTITY F | COMBINED VALUE OF EF |
|---|---|---|---|
| X–5 | 30 | 30 (excluded per First Union) | 30 |
| X–4 | 30 | 30 (excluded per First Union) | 30 |
| X–3 | 30 | 30 (excluded per First Union) | 30 |
| X–2 | 30 | 30 (excluded per First Union) | 30 |
| X–1 | 30 | 30 (excluded per First Union) | 30 |
| X | 30 | 30 | 60 |
| Total value for current year and preceding 5 years divided by 6 = share value to be taxed in current year | | | $210 \div 6 = 35$ |

■ As this court specifically noted in *Fidelity Bank*, the averaging methodology is intended to provide a more reliable reflection of the value of shares to be taxed in the current year; "it discourage[s] a bank from manipulating its holdings of federal obligations so as to artificially reduce its tax liability and minimize[s] the effect of random disturbances in value." 645 A.2d at 459, 460 (citing testimony of Commonwealth's public finance witness in rejecting contention that averaging methodology produces arbitrary results because it ignores current values).[12] However, the averaging method produces a reliable and, over time, accurate reflection of share values only in the first merger scenario described above (or for an institution which has not been involved in a merger). On the other hand, in the second and third merger situations described above, the averaging methodology required by Section 701.1(a) to calculate the taxable amount of shares results in an arbitrary reduced value which does not provide a reliable or accurate reflection of the share value sought to be taxed. Consequently, to the extent that the averaging provision set forth in Section 701.1(a) renders an artificially low tax base for only certain taxpayers, it frustrates the purpose of using a historical average share value, is unconstitutional and cannot be employed.

■ This conclusion, however, does not mandate that the averaging provision be completely stricken from the Tax Code. Nor must the averaging requirement be stricken in every instance of merger. Public policy favors severability. *Commonwealth, Dep't of Educ. v. The First School*, 471 Pa. 471, 370 A.2d 702 (1977); *Fidelity Bank*. Section 1925 of the Statutory Construction Act of 1972 provides as follows:

The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and *the application of such provision to other persons or circumstances, shall not be affected thereby,* unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925 (emphasis added). *Accord The First School* (holding that statute may be invalid only as to certain class and severing the Nonpublic Elementary and Secondary Education Act, Act of June 19, 1968, P.L. 232, formerly 24 P.S. §§ 5601–5608 [subsequently repealed] as it applied to sectarian nonpublic schools but holding statute to be valid and enforceable as it applied to nonsectarian nonpublic schools). Moreover, the lack of a severability clause, as appears to be the case here, without more, will not preclude an unconstitutional provision from being severed. *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003). Severance is precluded only where the remainder of the statutory

12. Prior to the 1983 amendments to Section 701 of the Shares Tax, the tax was imposed upon the "actual value" of the stock shares. Under the current statutory language, the tax is imposed upon the "taxable amount of shares." *See* Sections 701 and 701.1. In addition, the 1989 amendment to Section 701.1 changed the tax base from the share value for the current year to an average share value based upon the current year and the preceding five years. *See* Section 701.1.

scheme is incapable of execution in accordance with legislative intent. *Id.*

Here, we conclude that the averaging methodology required by Section 701.1(a) can be severed or limited when the taxable amount of shares results from the merger of an institution with a non-institution or an institution that has been in existence for fewer than six years without rendering the remainder of the Shares Tax incapable of execution (see footnote 15 below). Precluding application of Section 701.1(a) in these limited circumstances furthers the intent of the statutory scheme, which is to impose the tax on an amount which is a reliable reflection of an institution's share value, while allowing the benefits of six-year averaging to continue in the in-state merger or non-merger situations. That the Shares Tax remains capable of execution without the averaging provision is evident by the fact that prior to 1990, the taxable amount of shares was calculated based upon the data from a single year.[13] Section 701.1(b) provides the manner in which each year's taxable amount of shares shall be determined.[14]

On the other hand, to adopt the remedy sought by Farmers Bank, severance of the combination provision while leaving six-

---

13. In 1989, Section 701.1 provided:

> The value of shares shall be ascertained and fixed pursuant to section 701 by adding together the book value of capital stock paid in, the book value of the surplus and the book value of undivided profits with a deduction from the total thereof of an amount equal to the same percentage of such total as the book value of obligations of the United States bears to the book value of the total assets. For purposes of this section, book values and deductions for United States obligations shall be determined by the Reports of Condition for each calendar quarter of the preceding calendar year in accordance with the requirements of the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, . . . and book values shall be averaged as calculated by averaging book values as determined by such Reports of Condition. For purposes of this article, United States obligations shall be obligations coming with the scope of 31 U.S.C. § 3124.

14. Although Section 701.1(b) was amended by the Act of July 25, 2007, P.L. 1385, at all times relevant here, it provided:

> The value for each year required by subsection (a) shall be determined by adding together the book value of capital stock paid in, the book value of the surplus and the book value of undivided profits with a deduction from the total thereof of an amount equal to the same percentage of such total as the book value of obligations of the United States bears to the book value of the total assets. For purposes of this subsection, book values and deductions for United States obligations for each year shall be determined by the Reports of Condition for each calendar quarter of the preceding calendar year in accordance with the requirements of the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, . . . and book values shall be averaged as calculated by averaging book values as determined by such Reports of Condition. For purposes of this article, United States obligations shall be obligations coming within the scope of 31 U.S.C. § 3124. For any year in which an institution does not file four quarterly Reports of Condition, book values and deductions for United States obligations shall be determined by adding together the book values and deductions for United States obligations from each quarterly Reports of Condition filed for such year and dividing the resulting sums by the number of such Reports of Condition. In the case of institutions which do not file such Reports of Condition, book values shall be determined by generally accepted accounting principles as of the end of each calendar quarter. For any year in which an institution which does not file Reports of Condition is not in existence for four quarters, the book value for that year shall be determined by adding together the book values for each quarter in which the institution was in existence and dividing by that number of quarters. For purposes of this section, a partial year shall be treated as a full year.

year averaging intact, would allow all institutions resulting from a merger to obtain a diluted share value for up to six years. This would not only be contrary to the statutory purpose of taxing full and actual value, it would create a non-uniformity favoring institutions which have recently undergone a merger over those which have not. Consequently, we will mandate limited severance of the averaging provision and reject Farmers Bank's request that we sever the combination provision. To the extent our decision in *First Union* sanctions use of the six-year averaging methodology to calculate taxable amount of shares following a merger of an institution with an out-of-state bank or an institution fewer than six years old, it is overruled.

We agree with the Commonwealth that once the averaging methodology is severed in the limited circumstances mentioned above, the institution resulting from merger/acquisition of an out-of-state bank must be treated as a new institution for purposes of calculating the taxable amount of shares. Accordingly, for purposes of the merger year, the taxable amount of shares shall be calculated pursuant to Section 701.1(b) with no divisor (or a divisor of one).[15] The following tax year, the taxable amount of shares can be calculated using a divisor of two and so forth going forward, thereby following Section 701.1(a) and determining the taxable amount of shares based upon a historical average share value.[16] Finally, we note that precluding use of a six year average share value in only

the circumstances discussed above will cure the Uniformity Clause violation without impairing the intended statutory purpose, as such procedure will yield a fair approximation of full share value for all institutions.

■ This does not, however, conclude our discussion. Although adopting the procedure described above will prospectively cure the current non-uniformity of the Shares Tax, the question remains whether Farmers Bank is entitled to some retrospective relief. While it has paid the proper amount of tax, institutions which merged with out-of-state banks or with newly created institutions will have paid less than their fair share, to Farmers Bank's disadvantage. In similar circumstances, the United States Supreme Court in *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) held that:

> The question before us is whether prospective relief, by itself, exhausts the requirements of federal law. The answer is no: If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.

**15.** We note that in *First Union*, this court rejected the Commonwealth's argument that following the merger of two institutions and a non-institution, the surviving entity should be treated as a new bank for Shares Tax purposes, concluding that such result had no statutory support. *See* 867 A.2d at 716 n. 16. However, our holding in that regard does not preclude the conclusion we reach today. Because the constitutionality of the Shares Tax

was not before the court in *First Union*, the court was required to construe the statute as written.

**16.** In the case of merger of two institutions, one of which is fewer than six years old, the surviving institution can simply be treated as if it were the age of the younger merged partner.

*Id.* at 31, 110 S.Ct. 2238 (footnotes omitted). However, as our Supreme Court explained in *Annenberg v. Commonwealth,* 562 Pa. 581, 757 A.2d 338 (2000), the Court in *McKesson:*

> did not bind the state's hands in choosing what type of backward looking remedy it would employ. Rather, the Court held that State could cure the invalidity by: (1) refunding the difference between the tax paid and the tax that would have been assessed had the taxpayer been granted the unlawful exemption; (2) assessing and collecting back taxes, to the extent consistent with other constitutional restrictions, from those who benefited from the unlawful exemption during the contested tax period, calibrating the retroactive assessment to create in hindsight a nondiscriminatory scheme; or (3) applying a combination of a partial refund and a partial retroactive assessment, so long as the resultant tax actually assessed during the contested tax period reflects a scheme that does not discriminate against interstate commerce.

*Id.* at 600–01, 757 A.2d at 349–50 (footnote omitted).

Thus, in *Annenberg,* the court followed that approach and did not specify the nature of the relief required, but ordered only that "the [c]ounties must forthwith provide a retrospective remedy consistent with this opinion." *Id.* at 606, 757 A.2d at 352. We see no sound reason to vary from this precedent. Accordingly, we dismiss the exceptions filed by Farmers Bank, order the prospective application of limited severance of Section 701.1(a) described above and order that the Commonwealth take necessary steps to provide meaningful retrospective relief in accordance with the foregoing opinion.

***ORDER***

AND NOW, this 4th day of August, 2011, the exceptions filed by Lebanon Valley Farmers Bank in the above-captioned matter are hereby dismissed. The Commonwealth is further directed to provide a retrospective remedy consistent with the foregoing opinion.