83 A.3d 107

**LEBANON VALLEY FARMERS BANK, Appellant**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 27, 2012.

Decided Dec. 27, 2013.

456

Sara A. Lima, Esq., Kyle Oliver Sollie, Esq., Reed Smith LLP, Philadelphia, for Wells Fargo Bank, N.A. (Successor to First Union National Bank), amicus curiae.

David M. Kuchinos, Esq., Ann B. Laupheimer, Esq., Blank Rome LLP, Philadelphia, for Lebanon Valley Farmers Bank.

John Joseph Butchar, Esq., Howard Greeley Hopkirk, Esq., Kathleen Granahan Kane, Esq., John G. Knorr III, Esq.,

Carol L. Weitzel, Esq., PA Office of Attorney General, Harrisburg, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

Appellant, Lebanon Valley Farmers Bank (LVFB), appeals from the August 4, 2011, order and opinion of the *en banc* Commonwealth Court dismissing its exceptions to the February 12, 2009, order and opinion of the Commonwealth Court, which affirmed the order of the Board of Finance and Revenue. This is an appeal as of right pursuant to 42 Pa.C.S. § 723(b).[1] After careful review, we reverse.

■ The stipulated facts show Farmers Bank was a Pennsylvania chartered bank, and a subsidiary of Fulton Financial Corporation, which merged with Keystone Heritage Group, Inc. The merger made Fulton the parent company of Lebanon Valley National Bank, which merged with Farmers Bank as part of the transaction, thereby forming LVFB. Prior to the merger, both Farmers Bank and National Bank were "institutions" subject to the Shares Tax, 72 P.S. §§ 7701–7706.

The Shares Tax is set forth in Article VII of the Pennsylvania Tax Reform Code; it is imposed on the average taxable amount of a banking institution's shares of capital stock. "[C]alculation of the tax is based on the book value of the bank's net assets (adjusted to deduct value attributable to United States obligations)." *Allfirst Bank v. Commonwealth,* 593 Pa. 631, 933 A.2d 75, 81 (2007) (citing 72 P.S. § 7701.1). The Shares Tax has three provisions relevant to the present claim. First, the tax is imposed only upon "institutions," which is defined to include "[e]very bank operating as such

---

1. 42 Pa.C.S. § 723(b) provides: "Any final order of the Commonwealth Court entered in any appeal from a decision of the Board of Finance and Revenue shall be appealable to the Supreme Court, as of right, under this section." *Id.*

and having capital stock which is incorporated under any law of this Commonwealth, under the law of the United States or under the law of any other jurisdiction *and is located within this Commonwealth.*" 72 P.S. § 7701.5 (emphasis added). Thus, an out-of-state bank is not an "institution" for purposes of the Shares Tax, and thus, is not subject to the tax.

Second, in order to mitigate the effect of year-to-year fluctuations in value, the Shares Tax mandates an averaging method for calculating the taxable amount of shares—the tax is not imposed on present value but on the six-year average value. Specifically, § 7701.1(a) (the "averaging provision") of the Shares Tax provides:

> The taxable amount of shares shall be ascertained and fixed by adding together the value determined under subsection (b) for the current and preceding five years and dividing the resulting sum by six. If an institution has not been in existence for a period of six years, the taxable amount of shares shall be ascertained and fixed by adding together the values determined under subsection (b) for the number of years the institution has been in existence and dividing the resulting sum by such number of years.

*Id.,* § 7701.1(a).

Third, to prevent corporate maneuvering from creating this loss of revenue when two institutions merge, § 7701.1(c)(2) of the Shares Tax (the "combination provision") provides, in pertinent part:

> [T]he combination of two or more institutions into one shall be treated as if the constituent institutions had been a single institution in existence prior to as well as after the combination and the book values and deductions for United States obligations from the Reports of Condition of the constituent institutions shall be combined.

*Id.,* § 7701.1(c)(2).

For the 2002 tax year, LVFB filed a Bank Shares Tax return, which included National Bank's pre-merger value in its calculation of its six-year average share value, as required by the combination provision. However, in 2005, LVFB filed a

petition with the Board of Appeals, seeking a refund of the portion of its 2002 tax payment attributable to National Bank's pre-merger share value. It claimed disparate treatment because the combination provision is inapplicable when mergers involve out-of-state banks or banks less than six years old. In fact, the Commonwealth Court has held, under the plain language of the statute, the combination provision applies only to combinations of "institutions" (*i.e.*, banks with Pennsylvania locations). *First Union National Bank v. Commonwealth*, 867 A.2d 711, 716 (Pa.Cmwlth.), *exceptions dismissed*, 885 A.2d 112, 114 (Pa.Cmwlth.2005), *aff'd per curiam*, 587 Pa. 507, 901 A.2d 981 (2006). Thus, the pre-combination value of an out-of-state bank is not included in a surviving institution's six-year average value calculation under the terms of the statute.

LVFB argued the *"First Union* rule" affords disparate treatment for mergers of Pennsylvania and non-Pennsylvania banks, in violation of the Uniformity Clause. The Board of Appeals rejected the claim, and LVFB appealed to the Board of Finance and Revenue. Relying on *First Union*, the Board also denied the appeal. The Commonwealth Court initially affirmed, finding because the combination provision was revenue neutral, it did not violate the constitutional requirement of uniformity. *Lebanon Valley Farmers Bank v. Commonwealth (Farmers Bank I)*, 965 A.2d 1249, 1253 (Pa.Cmwlth. 2009). The court relied on the Commonwealth's explanation of the averaging provision, in light of *First Union*, as treating newly-acquired out-of-state banks "in the same manner as an institution that has not been in existence for six years." *Id.*, at 1253 n. 10 (citing 72 P.S. § 7701.1(a)).

LVFB filed exceptions asserting the court misunderstood the share value calculation required by the combination provision and *First Union*, and the court directed the matter to an en banc panel. In reply, the Commonwealth admitted its prior explanation to the court was incorrect and conceded the averaging provision will render an artificially low share value if either (1) an out-of-state bank is merged into an in-state bank, or (2) an in-state bank in existence for less than six years is merged into another in-state bank with a longer

history. *Lebanon Valley Farmers Bank v. Commonwealth (Farmers Bank II)*, 27 A.3d 288, 292–93 (Pa.Cmwlth.2011) (*en banc*) (citation omitted). In either of these situations, the averaging calculation used by the Commonwealth assigned a zero taxable share value for a bank for years in which it was not subject to the Shares Tax. Although "the disparity is eventually dissipated, the lost value during the first few post merger years, and the tax which should have been paid on those values, is never recovered." *Id.*, at 294. Because such dilution is unavailable to mergers between institutions that have been subject to the Shares Tax for six or more years, the court concluded the statutory scheme resulted in an unconstitutional lack of uniformity. *Id.*

The court, however, did not agree that this lack of uniformity required the severance of the combination provision, finding "the lack of uniformity occurs [only] when the combination provision is coupled with the use of an average share value." *Id.* The court reasoned, severing the combination provision in its entirety would frustrate the statutory purpose of the averaging methodology by favoring institutions which have recently undergone a merger over those that have not. Instead, the court held the averaging methodology should "be severed or limited when the taxable amount of shares results from the merger of an institution with a[n out-of-state bank] or an institution that has been in existence for fewer than six years[.]" *Id.*, at 297. Consequently, the court overruled *First Union* insofar as it "sanctions use of the six-year averaging methodology to calculate taxable amount of shares following a merger of an institution with an out-of-state bank or an institution fewer than six years old[.]" *Id.*, at 298.

In sum, the court held that when two Pennsylvania banks merge, the present and historical share values of each are combined and averaged over the past six years. *See* 72 P.S. § 7701.1(a), (c)(2). However, when a Pennsylvania institution combines with an out-of-state bank, the surviving institution (if subject to the Shares Tax) would be treated as a new institution with only the post-merger values of each considered in calculating the taxable share value. *Farmers Bank II*, at 298.

Finally, when two Pennsylvania banks merge, one of which is fewer than six years old, the surviving institution will be treated as if it were the age of the newer constituent institution. *Id.,* at 298 n. 16.

As a result, the court held LVFB, as the survivor of the merger of two Pennsylvania banks, must report a taxable share value which averages the combined share value of each constituent institution over the past six years and is, therefore, not entitled to a refund. *See id.,* at 298. However, the court ordered the Commonwealth "to provide meaningful retrospective relief" to cure LVFB's non-uniform treatment. *Id.,* at 299.

■ LVFB appealed, and this Court heard argument on whether the Shares Tax violates the Uniformity Clause and, if so, which remedy is proper. In addition, we considered the following issues on briefs:

Whether the Court's use of overly simplified examples caused it to misapprehend the facts and arrive at the erroneous legal conclusion that its holding "will yield a fair approximation of full share value for all institutions."

Whether proper application of principles of *stare decisis* should have precluded the Court from overruling the decision in *First Union,* a decision which was affirmed *per curium* [sic] by the Supreme Court of Pennsylvania.

Appellant's Brief, at 4–5. A challenge to the constitutionality of a statute presents this Court with a question of law; thus, "our standard of review is *de novo,* and our scope of review is plenary." *Schwartz v. Rockey,* 593 Pa. 536, 932 A.2d 885, 891 (2007).

Initially, LVFB argues the issue of whether the Shares Tax violates the Uniformity Clause is not properly before us because the Commonwealth failed to file a cross-appeal challenging the Commonwealth Court's uniformity holding, and LVFB's appeal only challenged the remedy prescribed. In response, the Commonwealth asserts it was not required to file a cross-appeal since the Commonwealth Court's judgment granted the relief it sought. Moreover, the Commonwealth

argues it is entitled to present arguments in support of the Commonwealth Court's judgment, which it seeks to have affirmed, even if those arguments differ in some respects from the reasoning relied upon by the Commonwealth Court. We agree the Commonwealth was not required to file a cross-appeal, and its argument challenging the Commonwealth Court's Uniformity Clause holding is properly before us.

Pennsylvania Rule of Appellate Procedure 501 provides, "any party who is aggrieved by an appealable order . . . may appeal therefrom." Pa.R.A.P. 501 (emphasis added). The Note to Rule 511 further states, "An appellee should not be required to file a cross appeal because the [c]ourt below ruled against it on an issue, as long as the judgment granted appellee the relief it sought." *Id.*, 511 note (citation omitted). "Pennsylvania case law also recognizes that a party adversely affected by earlier rulings in a case is not *required* to file a protective cross-appeal if that same party ultimately wins a judgment in its favor; the winner is not an 'aggrieved party.' " *Basile v. H & R Block,* Inc., 973 A.2d 417, 421 (Pa.2009) (citation omitted) (emphasis in original). Moreover, several Justices of this Court have gone a step further and suggested such appeals should not be permitted. *See id.*, at 424 (Saylor, J., concurring) (footnote omitted) (asserting "[protective] cross-appeals generally should not be permitted" given that "the collective burden of screening and addressing such cross-appeals may outweigh the benefits from the opportunity for an appellate court to advance the resolution of the litigation in individual cases"); *id.*, at 426–27 (Baer, J., concurring) (writing "separately to second Justice Saylor's inclinations to deem protective cross-appeals impermissible" because "refusing to hear [them] will streamline cases on appeal and prevent prevailing parties from deluging the courts with unnecessary protective cross-appeals[,]" and noting such practice would "eliminate[ ] the question of whether a non-aggrieved party filing a protective cross-appeal must raise every potential appealable issue for fear of waiver").

While appellant cites a case in which this Court has found an issue waived due to a party's failure to raise the same on

cross-appeal, that case is distinguishable as it involved an issue on which the lower court's holding was adverse to the appellee. *See Pennsylvania Human Relations Commission v. Alto–Reste Park Cemetery Association,* 453 Pa. 124, 306 A.2d 881, 885 (1973) (holding appellee precluded from challenging propriety of amended final order—issue decided adversely to it by Commonwealth Court—where failed to raise same in cross-appeal). In *Alto–Reste,* the Commission ordered Alto–Reste to undertake specific measures to end its discriminatory burial acceptance practices. On appeal, the Commonwealth Court affirmed, but modified the final order by deleting several of the specific measures. The Commission appealed the Commonwealth Court's modification. On appeal, Alto–Reste challenged the propriety of the amended final order of the Commission, an issue not raised by the Commission and decided adversely to Alto–Reste by the Commonwealth Court. We held Alto–Reste's challenge was waived by its failure to raise the same in a cross-appeal.

Here, the Commonwealth Court's judgment granted the relief the Commonwealth sought—LVFB's refund request was denied—even though the court disagreed with the constitutionality argument proffered by the Commonwealth to reach that result. While the Commonwealth certainly could have filed a cross-appeal raising a challenge to the Commonwealth Court's constitutionality determination, this Court refuses to require such a filing where the court's holding granted the relief sought, although based on an alternate reasoning.

 Moreover, any positive impact stemming from the filing of a protective cross-appeal is greatly outweighed by its negative impact on court efficiency. The court system is constantly inundated with appeals. "[R]efusing to hear protective cross-appeals will streamline cases on appeal and prevent prevailing parties from deluging the courts with unnecessary protective cross-appeals." *Basile,* at 427 (Baer, J., concurring). Protective cross-appeals by a party who received the relief requested are not favored. As such, a successful litigant need not file a protective cross-appeal on pain of waiver.

 Finding the Commonwealth Court's constitutionality ruling is properly before us, we move to the merits of this appeal. The Uniformity Clause prescribes "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1. "Taxation, however, is not a matter of exact science; hence[,] absolute equality and perfect uniformity are not required to satisfy the constitutional uniformity requirement." *Clifton v. Allegheny County*, 600 Pa. 662, 969 A.2d 1197, 1210 (2009) (citing *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349, 1352 (1985); *In re Harleigh Realty Co.*, 299 Pa. 385, 149 A. 653, 654 (1930) ("Scientific formulae, arithmetical deductions and mental contemplations, have small value in making assessments under our practical system of taxation.")). "Some practical inequalities are obviously anticipated, and so long as the taxing scheme does not impose substantially unequal tax burdens, rough uniformity with a limited amount of variation is permitted." *Id.*, at 1210–11 (citations omitted); *see also Delaware, L. & W.R. Co.'s Tax Assessment*, 224 Pa. 240, 73 A. 429, 430 (1909) (noting Uniformity Clause requires only substantial uniformity, "which means as nearly uniform as practicable in view of the instrumentalities with which and subjects upon which tax laws operate").

 A taxpayer who believes he has been subjected to unequal taxation due to an allegedly unconstitutional statute must demonstrate: "(1) the enactment results in some form of classification; [2] and (2) such classification is unreasonable and not rationally related to any legitimate state purpose." *Clifton*, at 1211 (citation omitted). When this Court is presented with such a challenge, we must remain cognizant of the General Assembly's broad authority and wide discretion in taxing matters, *see Wilson Partners, L.P. v. Commonwealth, Board of Finance and Revenue*, 558 Pa. 462, 737 A.2d 1215,

2. Neither party challenges the treatment of institutions formed from the merger of two institutions or institutions formed from the merger of an institution with an out-of-state bank or a bank in existence for less than six years as members of the same class for purposes of the Uniformity Clause. Accordingly, they will be treated as members of the same class.

1220 (1999), and the presumption of constitutionality afforded to statutes. *See* 1 Pa.C.S. § 1922(3). Thus, a tax enactment will not be invalidated unless it " 'clearly, palpably, and plainly violates the Constitution.' " *Clifton*, at 1211 (quoting *Wilson Partners*, at 1220).

The Commonwealth Court described its result as "limited severance," applicable to the averaging provision when certain banks merge. As noted previously, this tax is not based on current assets, but on the average assets of the institution over the prior six years. The averaging provision is not an adjunct section applicable or inapplicable depending on the corporate history of the institution. *See* 72 P.S. § 7701.1(a). To hold it applicable some of the time but not others is not appropriate, for it is the express statutory methodology of calculating the tax for every taxable institution.

The "non-uniform" treatment arises from the combination provision, which treats the joinder of previously taxable institutions in such a manner as to prevent the dissipation of historically taxable assets. The averaging provision clearly applies to all institutions and does not speak at all to combinations. The combination provision in turn is silent on the methodology applicable to a combination of an institution and a non-institution; in that situation, it simply does not apply. *See id.*, § 7701.1(c)(2).

There is an initial confounding of the analysis because of the differences in language between corporate law and tax law. Merger is not the only method for companies to consolidate; indeed, the parties' briefs speak of bank acquisitions as opposed to bank absorptions, and of surviving institutions rather than new institutions. The question of what form of combination occurred and what corporate term describes the resulting institution is one of corporate jargon, not Shares Tax application.[3]

3. When asked whether a merger can create a "new" institution for tax purposes, LVFB replied that it cannot, although LVFB itself did not exist before this merger. The Commonwealth's position is that if the surviving bank is out-of-state, it is a new institution; if in-state, it is not a new institution. This is equally confounding, as a "surviving" bank is

The Shares Tax is only applicable post-merger if there is an "institution" to tax. When the merger or combination adds previously untaxed assets to the institution's value, the complaint is that the averaging calculation used by the Commonwealth treats the assets as previously non-existent. The assets, however, are new to the reach of Pennsylvania's tax. While these assets may have existed pre-merger, they were not subject to tax pre-merger. The Commonwealth thus benefits from such a merger, as the addition of taxable assets enriches the public coffers.

Because the averaging provision is the method of calculating tax, the additional assets will not be immediately reflected dollar-for-dollar in the average taxable assets of the post-merger institution. What is significant, however, is that the adding of assets to the reach of Pennsylvania's tax law is a tangibly different scenario than merging two previously taxed institutions. This in turn justifies the short-term disparity of result that lies at the heart of the present appeal, for the situations are sufficiently distinguishable to warrant distinguishable results. The merger or combination of two institutions, both previously taxed on their historic average values, is a different scenario than a combination that introduces previously untaxable assets to the calculation. We see no unconstitutional disparity of treatment in this legislative scheme.

Accordingly, the Commonwealth Court erred in determining the averaging provision was unconstitutional and limitedly severing it on this basis.

Order reversed. Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices TODD and McCAFFERY join the opinion.

Justice SAYLOR files a dissenting opinion in which Justice BAER joins.

a concept not mentioned in the tax law, and an out-of-state bank is not an institution at all.

Justice SAYLOR, dissenting.

I respectfully dissent, as I would find that the Bank Shares Tax's combination provision violates tax uniformity insofar as it has been interpreted to exclude out-of-state banks. I would not, however, affirm the Commonwealth Court's decision, as I believe that its attempt to resolve the infirmity also leads to a non-uniform taxing scheme. Rather, I would construe the combination provision to subsume mergers with in-state or out-of-state banks equally. My reasoning follows.

Under Pennsylvania's Uniformity Clause, *see* Pa. Const. art. VIII, § 1 (requiring all taxes to be uniform upon the same class of subjects), taxpayers are entitled to pay no more or less than their proportionate share of government. *See Deitch Co. v. Bd. of Prop. Assessment, Appeals, & Review,* 417 Pa. 213, 220, 209 A.2d 397, 401 (1965). Thus, the intermediate court in *Fidelity Bank, N.A. v. Commonwealth,* 165 Pa. Cmwlth. 524, 645 A.2d 452 (1994), noted that, "[f]or a tax to be considered uniform, the classification of taxpayers must be reasonable and the tax itself must be applied with uniformity upon similar kinds of businesses or property with substantial equality of the tax burden on all members of the class." *Id.* at 540, 645 A.2d at 461; *accord Columbia Gas Transmission Corp. v. Commonwealth,* 468 Pa. 145, 151, 360 A.2d 592, 595 (1976). The court continued:

> Just because ... a difference can be articulated does not mean the difference is one that satisfies the Uniformity Clause. For example, while there are substantial differences between commercial or industrial real estate and residential real estate, to tax them differently has been held to violate the Uniformity Clause.

*Fidelity Bank,* 165 Pa.Cmwlth. at 541, 645 A.2d at 461 (citing, *inter alia, Appeal of Mass. Mut. Life Ins. Co.,* 426 Pa. 566, 235 A.2d 790 (1967), and *McKnight Shopping Ctr. v. Bd. of Prop. Assessment,* 417 Pa. 234, 209 A.2d 389 (1965)).

Here, the majority recognizes that an institution formed from the merger of two instate banks (an "in-state merger") is part of the same class of taxable entities as an institution

formed from the merger of one in-state bank and one extra-territorial bank (a "hybrid merger"). *See* Majority Opinion, at 465 n.2, 83 A.3d at 113 n.2. It also acknowledges that, under the Commonwealth Court's prevailing interpretation of the combination provision, *see* 72 P.S. § 7701(c)(2), as set forth in its *First Union* decisions,[1] an in-state merger may be subject to substantially higher tax liability than a hybrid merger for several years. *See* Majority Opinion, at 459–61, 83 A.3d at 110. This is because, under the *First Union* rule, when the combination provision is applied to a hybrid merger, the pre-merger book value of the extraterritorial bank is not included in the historical averaging methodology to determine its cur-rent value for purposes of computing its tax liability. *See First Union I*, 867 A.2d at 716; *First Union II*, 885 A.2d at 113–14. The majority accepts the *First Union* rule and justifies the disparity, for uniformity purposes, solely on the basis that the extraterritorial bank's assets were previously untaxable by Pennsylvania, and hence, the hybrid merger "add[s] assets to the reach of Pennsylvania tax law[.]" *Id.* at 114.

I find this justification difficult to support, for two primary reasons. First, the distinction stems from the fortuity that one of the banks involved in a hybrid-merger was, prior to the tax year in question, located outside of Pennsylvania. Nota-bly, the statute is designed to tax the value of shares in the current tax year, *see* 72 P.S. §§ 7701, 7701.1(a), and not to re-tax share values from previous years. *See Fidelity Bank*, 165 Pa.Cmwlth. at 539, 645 A.2d at 460 (observing that the share values from prior years are considered solely as a means of ascertaining the value of shares to be taxed in the current year); *accord* Reply Appellant's Brief at 5 ("The uniformity analysis in this case hinges on whether two Pennsylvania banks ... could be required to measure their post-merger share value based upon where their merger partners were located prior to the mergers."). Presumably to account for potential fluctuations, the Legislature added a moving six-year

1. *First Union Nat'l Bank v. Commonwealth*, 867 A.2d 711 (Pa.Cmwlth.) (*"First Union I "*), *exceptions dismissed*, 885 A.2d 112 (Pa.Cmwlth.2005) (*"First Union II "*), *aff'd per curiam*, 587 Pa. 507, 901 A.2d 981 (2006) (*"First Union III "*).

average to the assessment formula in 1989. *See generally Fidelity Bank*, 165 Pa.Cmwlth. at 539, 645 A.2d at 460 ("The purpose of determining a reliable value of property subject to tax is certainly a legitimate purpose and based on the expert testimony this averaging method is a rational means to that purpose.").[2] That being the case, the distinguishing circumstance identified by the majority—that one of the banks was immune from Pennsylvania taxation in previous tax years—is, to my mind at least, an arbitrary basis for disparate tax treatment, since it has no apparent relevance to the purpose of the bank shares tax generally or to the legislative intent underlying six-year averaging. Accordingly, I find the majority's reasoning to be in substantial tension with uniformity precepts previously articulated by this Court.[3] Although perhaps not a perfect analogy, it is as if the Court were to declare that tax uniformity was satisfied by either: (1) a municipal property tax on mobile homes that was substantially lower for mobile homes that had been brought into the municipality within the past six years; or (2) a state income tax levied on workers who moved to Pennsylvania within the last six years at only a fraction of the rate for longstanding in-state workers. The relocated mobile home or income stream in such a case would be "new to the reach" of the tax, Majority Opinion, at

2. The constitutional validity of that mechanism was upheld by the Commonwealth Court in *Fidelity Bank* and *Royal Bank of Pennsylvania v. Commonwealth*, 705 A.2d 515, 516 (Pa.Cmwlth.1998) ("[T]here is nothing in the Uniformity Clause that requires that the value of the property in the current taxing year be the only consideration for the calculation of actual value." (internal quotation marks omitted)), and it has not been challenged as a general matter in the present dispute.

3. *See, e.g., Leonard v. Thornburgh*, 507 Pa. 317, 321, 489 A.2d 1349, 1352 (1985) (explaining that, to justify differential tax treatment, the distinction must be non-arbitrary, reasonable, and just); *accord Clifton v. Allegheny Cnty.*, 600 Pa. 662, 686, 969 A.2d 1197, 1211 (2009); *see also Bold v. Cnty. of Lancaster*, 569 Pa. 107, 116, 801 A.2d 469, 474 (2002) (observing that classifications in a taxing scheme must have a rational basis); *Leventhal v. City of Phila.*, 518 Pa. 233, 239, 542 A.2d 1328, 1331 (1988) (same); *cf. Columbia Gas Transmission Corp. v. Commonwealth*, 468 Pa. 145, 150, 360 A.2d 592, 595 (1976) (determining that disparate tax treatment based solely on whether the taxpayer was incorporated in, or outside of, Pennsylvania, violates the Uniformity Clause); *Gilbert Assocs., Inc. v. Commonwealth*, 498 Pa. 514, 519, 447 A.2d 944, 947 (1982) (same).

467, 83 A.3d at 114, but that would be of little relevance to the uniformity analysis.

The second reason I have difficulty accepting the majority's rationale is that it is unclear whether its factual premise can withstand scrutiny. The concept that the Commonwealth invariably benefits, at least to some degree, from hybrid mergers because "the addition of taxable assets enriches the public coffers," Majority Opinion, at 467, 83 A.3d at 114, overlooks that the institution may apportion the taxable value of its shares according to the percentage of its total payroll, receipts, and deposits that are located in Pennsylvania. *See* 72 P.S. § 7701.4. If the extraterritorial bank delays in bringing any of these items into the Commonwealth, not only will Pennsylvania not benefit, but it will lose significant revenue due to the distorting effects of the *First Union* rule on the Commonwealth's ability to tax in-state assets. Hence, the Pennsylvania-will-benefit predicate for imposing a lower tax on hybrid mergers appears insufficient, from my perspective, to sustain a more lenient tax burden for this additional reason.

With that said, I also agree with Appellant to the extent it argues that the Commonwealth Court's purported resolution of the uniformity issue does not cure the infirmity. The court directed new-bank treatment for hybrid mergers, stating that this would produce a "reliable reflection" of such an institution's share values while also retaining the benefits of six-year averaging for in-state mergers. *Lebanon Valley Farmers Bank v. Commonwealth*, 27 A.3d 288, 297 (Pa.Cmwlth.2011) (*en banc*); *see also id.* at 298 (reasoning that preventing use of six-year averaging only in the hybrid-merger scenario "will cure the Uniformity Clause violation without impairing the intended statutory purpose, as such procedure will yield a fair approximation of full share value for all institutions"). The difficulty, as the Commonwealth Court itself noted, is that its ultimate determination was based on "overly simplified" data. *Id.* at 294 n. 11. Indeed, all of the court's examples assumed that each bank had exactly the same value every year for at least six consecutive years.

Not only is this assumption unrealistic, but Appellant has provided additional examples demonstrating that the Commonwealth Court's holding may produce arbitrary tax burdens in situations where the value of the banks are not stable over a six-year period. For instance, where the banks have been declining in value, affording new-bank treatment to a hybrid merger results in substantially reduced tax liability for the "new" institution because the previous years' higher values are not factored in. *See* Brief for Appellant at 29. In such a circumstance, the tax disparity as compared to an in-state merger can be even more dramatic than under the *First Union* rule that the Commonwealth Court presently overruled on uniformity grounds.[4] Conversely, where the banks have been increasing in value over the last six years, new-bank treatment for the hybrid merger will occasion significantly increased liabilities as compared to six-year averaging because the prior years' lower values are not taken into account. *See id.* at 28.

In view of the above, the question arises how to interpret the statute in accordance with legislative intent while also avoiding unconstitutionally disparate tax liabilities. In this regard, I initially agree with the majority's premise that the averaging provision, 72 P.S. § 7701.1(a), was intended to apply to hybrid mergers. *See* Majority Opinion, at 465, 83 A.3d at 113. I would not, however, endorse the *First Union* rule in light of the unequal tax burdens that it engenders, as explained above. Instead, I believe it is worth re-examining the use of the word "institution" in the combination provision. The majority proceeds from the assumption that the term was not intended to include out-of-state banks, *see* Majority Opinion, at 466, 83 A.3d at 114—which is consistent with the Commonwealth Court's reading in its *First Union* decisions, *see, e.g., First Union I,* 867 A.2d at 716, and the statutory

---

4. This Court's summary affirmance, in *First Union III,* of the Commonwealth Court's decision was not stated to be on the basis of that court's opinions. Thus, we did not approve the intermediate court's rationale, and our *per curiam* order became law of the case rather than binding precedent. *See Commonwealth v. Tilghman,* 543 Pa. 578, 589, 673 A.2d 898, 904 (1996).

definition, which contemplates banks that are "located within this Commonwealth," 72 P.S. § 7701.5. Notably, however, that definition is expressly made subject to the proviso, "except where the context clearly indicates a different meaning." *Id.* In this regard, it bears noting that the combination provision was added to the statute in 1989 at the same time that six-year averaging was introduced into the valuation scheme. *See* Act of July 1, 1989, P.L. 95, No. 21, § 1. At that time, the tax was imposed on banks only, there was no definitional section, and it is unclear whether the Legislature considered how these changes might apply to hybrid mergers.

Nearly five years later, the General Assembly made a general substitution of "institution" for "bank," and defined "institution" in a new definitional section, Section 701.5. *See* Act of June 16, 1994, P.L. 279, No. 48, § 17; 72 P.S. § 7701.5. However, the restricted definition of "institution," to include only in-state banks, was not evidently formulated with the combination provision in mind, especially since the Bank Shares Tax sets forth no distinct method for determining the taxable amount in cases involving hybrid mergers. While this alone may not mean that the context of the combination provision indicates a different meaning for "institution," it is notable that applying the new, after-the-fact definition within the context of the combination provision leads to a conundrum that is evidenced by the Commonwealth Court's shifting views on how that provision is to be applied to hybrid mergers, and its inability to formulate a satisfactory mode of application after nearly two decades of co-existence of the combination provision and the definitional section. As well, after the Commonwealth Court issued its decision in this case, the Legislature eliminated six-year averaging entirely, effectively reverting to the pre–1989 valuation scheme. *See* Act of July 9, 2013, P.L. 270, No. 52, § 22.

As a general matter, limiting language formulated in terms of whether the context "indicates otherwise" has been described as a "practical qualifying pressure valve." *Pope v. Sec'y of Pers.*, 46 Md.App. 716, 420 A.2d 1017, 1018 (Md.Ct. Spec.App.1980). Under this view, in assessing whether the context indicates otherwise, courts may consider whether the

"broad policy of the law" would be vitiated under the restrictive definition in question. *Maryland State Bar Ass'n v. Frank*, 272 Md. 528, 325 A.2d 718, 721 (1974). *A fortiori,* where a constitutional violation would ensue from application of the restrictive definition, it seems reasonable to believe that the General Assembly may have intended for a different meaning to pertain. *See generally* 1 Pa.C.S. § 1922(3) (reflecting that the Legislature does not intend to violate the U.S. Constitution or the Pennsylvania Constitution). As explained, I consider the *First Union* methodology as giving rise to a Uniformity Clause violation. Moreover, the General Assembly has not provided any alternative means for assessing the taxable value of hybrid mergers; indeed, the combination provision is the *only* statement of the intention of the Assembly with respect to the assessment of taxable share value in the case of merger. Finally, the legislative policy underlying the moving six-year averaging scheme is effectuated more fully by reading "institution" to include out-of-state banks for purposes of the combination provision, than by the *First Union* rule presently endorsed by the majority. Therefore, I would conclude that the term "institution," as it is used in the combination provision, appears in a context that clearly indicates a different meaning than that provided in the definition, and that it was meant to encompass both in-state and out-of-state banks. Hence, I would hold that the combination provision applies equally to in-state and hybrid mergers.[5]

For the reasons given, I would vacate the order of the Commonwealth Court and remand for further proceedings aimed at achieving rough tax equalization as between in-state and hybrid mergers in accordance with prevailing law. Be-

---

5. Notably, the combination provision does not expressly or impliedly prohibit application of the same six-year averaging method for in-state and hybrid mergers. Thus, even apart from a broad reading "institution" within the framework of the combination provision, I would defer to the government's administrative interpretation that the same method of six-year averaging was intended to obtain for in-state and hybrid mergers, as I find this position to be reasonable. *Accord First Union II,* 885 A.2d at 117 (Smith–Ribner, J., dissenting).

cause the majority adopts the *First Union* rule and precludes such relief, I respectfully dissent.

Justice BAER joins this dissenting opinion.