**BERGER & MONTAGUE, P.C., Plaintiff,**

v.

**SCOTT & SCOTT, LLC, Defendant.**

**No. CIV. A. 01–1895.**

United States District Court, E.D. Pennsylvania.

July 24, 2001.

Abraham C. Reich, Fox, Rothschild, O'Brien & Frankle, Philadelphia, PA, for Plaintiff.

John F. O'Riordan, Eckert, Seamans, Cherin & Mellott, LLC, Philadelphia, PA, for Defendant.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

In this Civil Suit between two law firms, Defendant, Scott & Scott LLC ("Scott"), moves for a partial dismissal of Counts II and III of Plaintiff's Complaint for failure to state a claim upon which relief may be granted. For the reasons that follow, we will deny the Defendant's motion.

### *Background*

In the Spring of 1997, Scott introduced Berger to potential clients who later retained Berger to serve as lead counsel in a California antitrust action. In July of 1997, Berger entered a Retainer Agree-

ment ("Agreement") with the clients. The Agreement included the following provisions: the clients will pay the costs of the suit, and a reduced hourly wage will be paid to Berger, Scott, and affiliated counsel. Also, if the clients win the case, Berger and Scott will receive a contingency fee that is offset by the amounts received as non-contingent payments. Moreover, during the two and a half years Scott and Berger are lead counsel, Scott was responsible for collecting money from the clients and placing it in a Plaintiff Litigation Fund ("Fund"); all disbursements from the Fund were made by Scott.

Berger eventually withdrew as lead counsel, and began negotiations with Scott and the clients to transition lead counsel to another firm. Thereafter, Berger entered into a Memorandum of Understanding ("Memo") with Scott and the clients to reduce Berger's fee to 50% of the total contingent fees. Under this Memo, Berger and Scott entered a separate agreement to divide the 50% of the total fees awarded. Thus, if the case was won, 50% of the total fee would be divided between Berger and Scott according to each firm's respective lodestar. Furthermore, both Berger and Scott would be reimbursed for their costs.

On December 4, 2000, the clients' case settled, and the new lead counsel was paid $1,968,170.90 in fees. From this amount, Berger and Scott were due $984,085.45, which, under the agreement, the firms were to split according to their lodestars. The $984,085.45 was forwarded to Scott for distribution pursuant to the terms and conditions of the Agreement. However, Scott has failed to pay Berger its full share of the $984,085.45. To date, Scott has only paid Berger the sum of $315,000, which does not reflect Berger's share of the fees due under the Agreement.

### Motion to Dismiss Standards

The standards for granting a motion to dismiss are outlined in Fed.R.Civ.P. 12(b)(6). Under Rule 12(b)(6), a motion to dismiss may be granted only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Quarles v. Germantown Hosp. & Cmty. Health Servs.*, 126 F.Supp.2d 878, 880 (E.D.Pa. 2000) (quoting *Hishon*). The Court must accept all well-pleaded allegations as true and construe the complaint in a light most favorable to the plaintiff when determining whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief. *See, e.g., Lake v. Arnold,* 232 F.3d 360, 365 (3d Cir.2000); *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir.2000). Although generally, courts may not look beyond the complaint in deciding a motion to dismiss under Rule 12(b)(6), "they may consider an undisputedly authentic document that a defendant attaches to a motion to dismiss, if the plaintiff's claims are based on that document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993); *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994).

### Discussion

In Counts I, II, and III of its Complaint, Berger contends that Scott has breached the contract between the parties, committed the tort of conversion, and that it is entitled to an accounting for Scott's failure to pay its portion of the referral fee. By way of the motion that is now before the Court, Scott seeks the dismissal of Counts II and III of the Complaint on the grounds that the "gist of action" test and the "economic loss doctrine" preclude Berger from recovering for the same wrong under theo-

ries of breach of contract and tort, and for an equitable accounting of Scott's legal fees, costs and funds associated with the clients' case.

■ Under Pennsylvania law, tort claims allegedly committed in the course of carrying out a contract are dismissible if the "gist" of them sound in contract instead of tort. *Quorum Health Res. Inc. v. Carbon–Schuylkill Cmty. Hosp. Inc.,* 49 F.Supp.2d 430, 432 (E.D.Pa.1999). The Pennsylvania state courts have thus developed a "gist of the action" test to establish if a claim asserts either a breach of contract or tort claim. *Lex & Smith Professional Assoc., Ltd. v. Wilmington Professional Assoc., Inc.,* No. CIV.A. 98–6422, 1999 WL 33100113 at *1 (E.D.Pa. May 18, 1999). Under this test, an action is considered a tort action if the wrong ascribed to the defendant is the gist of the action, with the contract being collateral. *Lex & Smith,* 1999 WL 33100113, at *1; *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.,* 444 Pa.Super. 221, 663 A.2d 753, 757 (Pa.Super.Ct.1995).

■ Moreover, under Pennsylvania's "economic loss doctrine," a plaintiff is prohibited "from recovering in tort economic losses to which their entitlement flows only from a contract," thereby circumventing the bar on collecting punitive damages for breach of contract. *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir.1995); *Craig v. Salamone,* No. CIV.A. 98–3685, 1999 WL 213368 at *8 (E.D.Pa. April 8, 1999). Conversion, of course is defined as the "deprivation of another's right of property in, or use of possession of a chattel, without the owner's consent and without lawful justification." *Bernhardt v. Needleman,* 705 A.2d 875 (Pa.Super.Ct.1998).

In *Bernhardt v. Needleman,* 705 A.2d 875 (Pa.Super.Ct.1998), the Superior Court considered the question of whether an ac-

tion for recovery of an attorney's unpaid referral fees would lie under the theories of conversion and breach of contract. In resolving this issue of first impression under Pennsylvania law, the Court examined Rule 1.5 of the Pennsylvania Professional Rules of Conduct. As the comment thereto recognized, a client and a contingent fee attorney contract for specified percentage interests in property—the proceeds of the lawsuit. Thus, the *Bernhardt* Court reasoned, "the contract for a referral fee is a contract for a division of work in exchange for a division of property—the attorney's interest in those proceeds. Accordingly, once a fee has been received, the referral fee can be the subject of conversion." *Bernhardt,* 705 A.2d at 879.

■ In the instant case, Berger and Scott entered an Agreement, that upon settlement of the case, the firms would divide the 50% of total fees awarded from the clients, according to each firm's respective lodestar. Furthermore, both Berger and Scott would be reimbursed for their costs. Moreover, Scott was responsible for the collection and disbursement of the fees received from the clients. The total fees awarded were $1,968,170.90, and from this amount Berger and Scott were due $984,085.45. The $984,085.45 was forwarded to Scott for distribution, however, Scott has not paid Berger its full share of the $984,085.45. Scott has only paid Berger $315,000, which does not reflect Berger's share of the fees due under the Agreement.

Under Berger and Scott's Agreement, the fees at issue are not specifically labeled "referral fees," as they are in *Bernhardt.* However, pursuant to the Agreement, Berger does have an interest in the fees due and owed to it, and such an interest can allow the fees to be the subject of a conversion. Thus, because Berger has a

property interest in the settlement proceeds, the "gist of action" test and the "economic loss" doctrine does not bar Berger from proceeding on both a breach of contract and conversion claim.

Moreover, even if the "gist of action" test and "economic loss doctrine" were to bar Berger from proceeding simultaneously on breach of contract and conversion claims, Berger can still plead both claims as alternative theories of liability against Scott. Indeed, Federal Rule of Civil Procedure 8(d)(2) states,

> "A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Fed.R.Civ.P. 8(d)(2).

Therefore, as Federal Rule of Civil Procedure 8(d)(2) allows Berger to plead two or more alternative claims against Scott for either breach of contract or conversion, regardless of their consistency, and whether based on legal, equitable or other grounds, Defendant's motion to dismiss the claim for conversion must, at this juncture, be denied. Fed.R.Civ.P. 8(d)(2).

■ In Count III of its Complaint, Berger requests an accounting of Scott's legal fees and costs associated with the clients' case, as well as a complete accounting of the Fund. Plaintiff agrees that it can not maintain an equitable accounting of Scott's legal fees and costs because it has adequate remedies at law for breach of contract and conversion. However, under *Haft v. United States Steel Corp.*, 346 Pa.Super. Ct. 404, 499 A.2d 676 (1985), Berger can maintain a claim for a legal accounting. As discussed in *Haft*, to meet the requirements for a legal accounting, Berger must show that,

> "(1) there was a valid contract, express or implied between the parties whereby the defendant received monies as agent, trustee or in any other capacity whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for the monies received by the defendant, or (b) if the relationship created by the contract between the plaintiff and defendant created a legal duty upon the defendant to account and the defendant failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him, and
>
> (2) that the defendant breached or was in dereliction of his duty under the contract." *Haft v. United States Steel Corp.*, 346 Pa.Super. 404, 499 A.2d 676 (1985); *Daikuzono v. Surgical Laser Technologies*, No. CIV.A. 96–0833, 1997 WL 52023 at *4. (E.D.Pa. February 3, 1997).

■ In this case, the Complaint avers that (1) Scott was responsible under the parties' agreement for the collection and distribution of monies received from the clients; and (2) Scott's subsequent failure to provide Berger with a full accounting of its costs and fees, constituted a breach of its duty under the Agreement. We find that the allegations sufficiently plead a claim for a legal accounting under *Haft*. For this reason, we shall also deny the Defendant's motion to dismiss the Plaintiff's claim for an accounting.

### Conclusion

For all of the foregoing reasons, we will deny Scott's partial motion to Dismiss

Counts II and III of the Complaint. An appropriate Order follows.

### ORDER

AND NOW, this 24th day of July, 2001, upon consideration of Defendant's Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief May be Granted, and Plaintiff's response thereto, it is hereby ORDERED that the Motion is Denied.