137 A.3d 1247

MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C.

v.

LAW FIRM OF MALONE MIDDLEMAN, P.C., and Candace A. Eazor and Richard Eazor, as Executors of the Estate of Richard A. Eazor

Appeal of Law Firm of Malone Middleman, P.C.

Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.

v.

Law Firm of Malone Middleman, P.C., and Candace A. Eazor and Richard Eazor, as Executors of the Estate of Richard A. Eazor

Appeal of Law Firm of Malone Middleman, P.C.

Supreme Court of Pennsylvania.

Argued Oct. 6, 2015.

Resubmitted Jan. 20, 2016.

Decided April 25, 2016.

428

Paul S. Guarnieri, Esq., Malone Middleman, P.C., Wexford, for Malone Middleman, P.C.

Scott Alden Millhouse, Esq., Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C., Pittsburgh, for Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.

Candace A. Eazor, Pro Se.

Richard Eazor, Pro Se.

SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.

## OPINION

Justice BAER.

This case presents a dispute between two law firms over attorney's fees earned in a wrongful death civil litigation settlement. We granted allocatur to examine the propriety of the Superior Court's holding that a law firm, which had formerly provided representation in the wrongful death action, was entitled to breach of contract damages against a successor law firm that ultimately obtained a settlement in the case when no contract existed between the two law firms. For the reasons that follow, we reverse.

The parties herein elected to have their case decided by a judge as a "Case Submitted on Stipulated Facts" pursuant to Pa.R.C.P. 1038.1.[1] The stipulated facts establish that on October 6, 2002, Richard A. Eazor was killed and Lynn Sharp was injured in a single automobile accident in Clearfield County. Eazor's estate and Sharp sued each other, with Sharp contending that Eazor drove the vehicle when the

1. This rule provides that "[a] case may be submitted on stipulated facts for decision by a judge without a jury. The practice and procedure as far as practicable shall be in accordance with the rules governing a trial without jury." Pa.R.C.P. 1038.1.

accident occurred and Eazor's estate alleging that Sharp was the driver. Progressive Insurance Company, the liability carrier for Sharp, retained counsel to represent both parties as defendants in the respective actions, while Sentry Insurance, the carrier for Eazor, remained potentially liable for underinsured motorists' coverage payable to the person deemed to be the passenger in the vehicle.

Attorney William Weiler, Jr., entered his appearance on behalf of the Eazor estate on March 24, 2005. Later that year, on December 1, 2005, Attorney Weiler became associated with the law firm of Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C., ("Meyer Darragh"), and entered into a written employment agreement acknowledging that "[a]ny and all legal work performed by Weiler will be deemed work on behalf of the Firm." *See* Employment Agreement dated November 18, 2005, at Paragraph 11, Exhibit 1 to Proposed Stipulated Facts. Attorney Weiler further agreed as follows:

> All fees for legal services performed during the term of this Agreement by Weiler or on behalf of any client originated by Weiler shall be the property of the Firm, regardless of whether the fees are received by the Firm during the term of this Agreement or after the expiration or termination of it and regardless of whether Weiler originated the client or matter prior to the effective date of this Agreement. . . . The Firm will have the sole right to collect fees due to it and Weiler will cooperate in the Firm's collection efforts. Further, it is agreed that any and all files relating to legal work performed by Weiler or on behalf of clients originated by Weiler shall be the property of the Firm and/or the clients and Weiler shall not remove same from the premises of the Firm, absent written permission from the Firm or written instructions by the client.

*Id.,* at Paragraph 12.

One of the cases that Attorney Weiler brought with him to Meyer Darragh was the Eazor estate litigation. Attorney Scott Millhouse of Meyer Darragh subsequently became primarily responsible for the case and drafted a proposed settlement agreement dated May 3, 2007, which was sent to all

counsel, but was never signed.[2] Attorney Millhouse, Attorney Weiler, and other employees of Meyer Darragh worked on the case over the course of nineteen months for a total of 71.25 hours. *See* Proposed Stipulated Facts, Paragraphs 39, 40.

Without ever having become a partner of the firm, effective May 11, 2007, Attorney Weiler resigned from Meyer Darragh. Upon his departure, he agreed that Meyer Darragh would receive two-thirds of the attorney's fees arising from the Eazor estate litigation, and that he would retain one-third of the fees. In contravention of his employment agreement, however, Attorney Weiler later removed the Eazor estate litigation client file without Meyer Darragh's permission.

Attorney Weiler subsequently became affiliated with the law firm of Malone Middleman, P.C. ("Malone Middleman").[3] The Eazor estate thereafter decided to discharge Meyer Darragh and seek representation from Attorney Weiler and Malone Middleman, causing that firm to enter its appearance on May 20, 2007. Malone Middleman took over the case and entered into a contingency fee agreement with the Eazor estate, providing that the firm would represent the estate in exchange for one-third of the proceeds of any settlement reached before suit was filed. The contingent fee agreement did not address the payment of attorney's fees to Meyer Darragh. Further, Malone Middleman did not agree in writing or otherwise to protect the fee purportedly earned by Meyer Darragh.

On June 13, 2007, after discovering the change in representation, Meyer Darragh informed Malone Middleman that it was entitled to two-thirds of any attorney's fees generated from the Eazor estate litigation pursuant to its agreement with Attorney Weiler. Malone Middleman denied that it was bound by the agreement between Attorney Weiler and

2. The Eazor estate did not sign a contingent fee agreement with Meyer Darragh, but did sign a contingent fee agreement with Attorney Weiler, individually.

3. Although Attorney Weiler's name was added to Malone Middleman's letterhead, he never actually worked for the firm or received any salary or employment benefit because he became ill prior to his scheduled commencement of employment.

Meyer Darragh, noting that, at most, Meyer Darragh may have a *quantum meruit* claim for actual time expended performing legal services.[4]

Shortly before the commencement of trial and after performing a total of 343 hours of legal work on the case, Malone Middleman settled the Eazor estate litigation for $235,000, with Malone Middleman receiving $67,000 in attorney's fees. Meyer Darragh thereafter reiterated its claim of entitlement to two-thirds of that fee based upon its agreement with Attorney Weiler. Alternatively, in support of a claim in *quantum meruit*, Meyer Darragh also submitted to Malone Middleman an itemized bill for legal services, requesting $17,673.93 ($13,087.25 in fees, $895.10 in expenses, and $3,691.58 in advances to experts). Malone Middleman did not remit any portion of the attorney's fees recovered from the Eazor estate litigation to Meyer Darragh.

■ In September of 2010, Meyer Darragh commenced the instant action naming Malone Middleman and the Eazor estate as defendants. Attorney Weiler, who had since passed away, was not named in the action.[5] The amended complaint asserted: (1) a claim against Malone Middleman for breach of contract; and, (2) a claim against both Malone Middleman and the Eazor estate for *quantum meruit*.[6] Before the trial court,

4. An action in *quantum meruit* sounds in quasi-contract or contract implied in law and seeks the equitable remedy of restitution where one person has been unjustly enriched by the services of another. *Shafer Electric & Construction v. Mantia*, 626 Pa. 258, 96 A.3d 989, 992 n. 3 (2014).

5. The Superior Court below took judicial notice of the fact that Attorney Weiler died in October of 2009 in an automobile accident. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 95 A.3d 893, 895 n. 1 (Pa.Super.2014).

6. An action in contract is distinct from one in *quantum meruit* as demonstrated by the disparate measure of damages arising therefrom. *Shafer Electric & Construction*, 96 A.3d at 992 n. 3. Damages in a *quantum meruit* action are limited to the reasonable value of the services performed. *Id.* Remedies for breach of contract are designed to protect either a party's expectation interest by attempting to put him in the position he would have been had the contract been performed; his reliance interest by attempting to put him in the position he would have been had the contract not been made; or his restitution interest by

Meyer Darragh abandoned its *quantum meruit* claim against the Eazor estate, acknowledging that the estate had paid Malone Middleman in full for all attorney's fees charged.

As noted, the parties submitted stipulated facts and trial exhibits, and presented oral argument to the trial court regarding their respective legal positions. Ultimately, the trial court entered a verdict in favor of Meyer Darragh and against Malone Middleman on the *quantum meruit* claim in the amount of $14,721.39, and denied Meyer Darragh relief on the contract claim.[7] Both parties filed motions for post-trial relief, which the trial court denied. The trial court also found in favor of the Eazor estate on the *quantum meruit* claim, recognizing that Meyer Darragh had failed to pursue that contention.

In post-trial motions, although not at issue in this appeal, Malone Middleman first contended that the trial court erred by granting *quantum meruit* relief because Pennsylvania law prohibits a predecessor attorney from making a *quantum meruit* claim against a successor attorney and, instead, permits the claim to be brought only against the client. In rejecting this contention, the trial court acknowledged that Pennsylvania case law was inconsistent on the issue, but concluded that the precedent could not be read as *per se* prohibiting predecessor attorneys from asserting *quantum meruit* claims against successor attorneys. Trial Court Opinion, Nov. 26, 2012, at 5. Rather, the trial court reasoned, the applicability of *quantum meruit* "depends on the unique factual circumstances of each case … [with the] … focus … on whether the defendant has been unjustly enriched." *Id.* at 10 (citing *Styer v. Hugo*, 422 Pa.Super. 262, 619 A.2d 347, 350 (1993)).

making the other party return the benefit received to the party who conferred it. *Trosky v. Civil Serv. Comm'n*, 539 Pa. 356, 652 A.2d 813, 817 (1995); Restatement (Second) of Contracts, Section 344, Comment a.

7. The trial court did not grant *quantum meruit* relief in the requested amount of $17,673.93, as it concluded that the final two entries on the itemized bill related to the fee dispute and were not part of legal services performed on behalf of the Eazor estate litigation.

The trial court concluded that Malone Middleman would be unjustly enriched by retention of the entire fee because Meyer Darragh conferred a benefit upon it by conducting depositions and establishing a settlement framework, which was realized when Malone Middleman obtained a settlement netting $67,000 in counsel fees. *Id.* The trial court found that it would be inequitable for Malone Middleman to retain that benefit without payment to Meyer Darragh, considering, *inter alia,* that Meyer Darragh allegedly cannot seek relief from the Eazor estate because the estate already paid all outstanding attorney's fees to Malone Middleman. *Id.*

In addressing the contract claim against Malone Middleman, which is the subject of this appeal, the trial court held that Attorney Weiler's agreement to pay Meyer Darragh two-thirds of the Eazor estate attorney fee was not binding on Malone Middleman. It noted that Meyer Darragh's breach of contract claim was premised entirely upon the Superior Court's decision in *Ruby v. Abington Memorial Hospital,* 50 A.3d 128 (Pa.Super.2012). The trial court interpreted *Ruby* as holding that a predecessor law firm was entitled to a share of the attorney's fees recovered by the successor law firm that ultimately obtained a settlement because such fees constituted the unfinished business of the partnership between the predecessor firm and the departing attorney under the Uniform Partnership Act ("UPA"), 15 Pa.C.S. §§ 8301–8365. Trial Court Opinion at 12 (citing *Ruby,* 50 A.3d at 132–36).

The trial court reasoned that *Ruby* was inapplicable to the instant case where Attorney Weiler was not a partner of Meyer Darragh, and Attorney Weiler's obligation to pay Meyer Darragh two-thirds of the Eazor estate contingent fee did not constitute the unfinished business of a partnership. *Id.* Absent the existence of a partnership between Meyer Darragh and Attorney Weiler, and considering that Malone Middleman was not a party to the agreement between Attorney Weiler and Meyer Darragh, the trial court concluded that Meyer Darragh's contract claim against Malone Middleman failed.

Both parties filed cross-appeals in the Superior Court, with Malone Middleman challenging the trial court's grant of relief

on the *quantum meruit* claim and Meyer Darragh contending, *inter alia*, that the trial court erred by denying relief on its breach of contract claim. The Superior Court vacated the trial court's order on both grounds, and remanded to the trial court to enter judgment in favor of Meyer Darragh on the breach of contract claim in an amount equal to two-thirds of the contingent attorney fee recovered from the Eazor estate settlement, with the trial court to calculate the precise amount. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.,* 95 A.3d 893 (Pa.Super.2014).

As to the *quantum meruit* claim, the Superior Court examined the same cases relied upon by the trial court in holding that the applicability of *quantum meruit* relief depends on whether the defendant has been unjustly enriched under the circumstances presented. The Superior Court, however, reached a different conclusion, holding that an attorney who initially represents a client and is dismissed may not maintain a *quantum meruit* action against the successor attorney who ultimately settles the case, and may only proceed in *quantum meruit* against the client. *Id.* at 897. Finding itself bound by broad language utilized in Superior Court case law, the court stated that "[u]ntil our supreme court holds otherwise, we will not recognize a claim for *quantum meruit* by a former attorney against a subsequent attorney." *Id.* at 898. Meyer Darragh did not seek allowance of appeal from the Superior Court's denial of *quantum meruit* relief.

Significantly, the Superior Court also held that the trial court erred in denying Meyer Darragh relief on its breach of contract claim. Based on its previous decision in *Ruby,* the court reasoned that even though Malone Middleman was not a party to the contract, its share of the attorney fee was limited by the terms of the contract between Attorney Weiler and Meyer Darragh. *Id.* at 898. Contrary to the trial court's interpretation, the Superior Court did not view the holding in *Ruby* as limited in applicability to attorney fee distribution agreements between a law firm and its departing partner. The court acknowledged that Attorney Weiler was not a

partner of Meyer Darragh, thus, attorney's fees relating to the Eazor estate could not be considered "unfinished business" between a law firm and departing partners within the meaning of the Uniform Partnership Act. *Id.* at 898–99. Nevertheless, the Superior Court held that Meyer Darragh was still entitled to two-thirds of the fees in accordance with its employment contract with Attorney Weiler. *Id.* at 899. To hold otherwise, it concluded, would, as in *Ruby,* ignore the reality of the circumstances giving rise to Meyer Darragh's claim. *Id.*

Despite its holding that under governing case law, Meyer Darragh could only pursue a *quantum merit* claim against its client and not Malone Middleman, the Superior Court revisited the *quantum meruit* discussion at the end of its opinion by noting that the doctrine would not apply here given the existence of the employment contract between Attorney Weiler and Meyer Darragh, to which Malone Middleman was not a party. Similarly, in concluding that Malone Middleman "may only take its share of attorneys' fees subject to the terms of the employment agreement," the Superior Court appears to have considered some factors suggesting a *quantum meruit* analysis. *See id.* at 899 (asserting that "Meyer Darragh and Attorney Millhouse did most of the work on the Eazor Estate file and Malone Middleman was promptly notified, before it signed a contingency fee agreement with the Estate, of Meyer Darragh's claim to two-thirds of any fees generated by the Eazor Estate litigation").[8]

8. As noted by Malone Middleman in its brief to this Court, the Superior Court's assertions in this regard are contrary to the stipulated facts establishing that Malone Middleman performed significantly more legal work on the Eazor estate litigation than Meyer Darragh. *See* Proposed Stipulated Facts at Paragraphs 40, 42 (establishing that Meyer Darragh performed 71.2 hours working on the Eazor estate litigation, while Malone Middleman performed 343 hours of legal work). The stipulated facts further demonstrate that Meyer Darragh informed Malone Middleman of its claim to fees after Malone Middleman entered its appearance as counsel for the Eazor estate. *Id.* at Paragraphs 24, 26 (establishing that Malone Middleman entered its appearance on behalf of the Eazor estate on May 20, 2007, and Attorney Millhouse of Meyer Darragh informed Malone Middleman of its claim to counsel fees on June 13, 2007).

█ As noted, this Court granted allowance of appeal to examine whether the Superior Court erred in awarding breach of contract damages to Meyer Darragh against Malone Middleman when no contract existed between the two law firms. We further granted allowance of appeal to decide the related issue of whether the Superior Court erred by extending the holding of that court's decision in *Ruby, supra,* to circumstances where there is no partnership between the predecessor law firm and the departing attorney. These inquiries can be addressed together and involve pure questions of law, over which our standard of review is *de novo,* and our scope of review is plenary. *Liberty Mut. Ins. Co. v. Domtar Paper Co.,* 631 Pa. 463, 113 A.3d 1230, 1234 (2015).

Malone Middleman contends there is no basis to hold it liable to Meyer Darragh under a breach of contract theory when it was not a party to the contract between Attorney Weiler and Meyer Darragh and it never agreed to either pay Meyer Darragh fees generated from the Eazor estate litigation or protect Meyer Darragh's interests in any way. It argues that the Superior Court's holding—that the fee distribution agreement between Attorney Weiler and Meyer Darragh was enforceable against Malone Middleman—ignores basic contract law, which requires the existence of a contract, a breach of the contract, and resulting damages. *See Electron Energy Corp. v. Short,* 408 Pa.Super. 563, 597 A.2d 175, 177 (1991) (holding that "[i]t is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract"). Malone Middleman maintains that the only contracts that existed in the case were between: (1) Meyer Darragh and Attorney Weiler, whom Meyer Darragh never sued; and, (2) Meyer Darragh and its former client, the Eazor estate, against whom Meyer Darragh voluntarily abandoned its claim.

Malone Middleman contends the Superior Court erroneously relied upon its decision in *Ruby,* which was based upon the statutory language of the UPA that recognizes fiduciary duties between partners. It argues that *Ruby* stands for the proposition that when a partner leaves and joins another firm, the

firm to which he moves takes the representation of any of his clients "subject to" the terms of any agreements he had with his previous partners. These fiduciary duties arise under the UPA only between partners, Malone Middleman asserts, and have no application here where Attorney Weiler was an employee of Meyer Darragh with no partnership interest. *See* 15 Pa.C.S. § 8334(a) (providing that "[e]very partner must account to the partnership for any benefit and hold as trustee for it any profits . . ."). Absent the statutorily-created fiduciary duties in the UPA, it posits that there is no basis in law to extend liability under a contract to a stranger to that agreement.

In Malone Middleman's view, Meyer Darragh either failed to bring or failed to pursue claims against the parties with whom it had direct relationships, *i.e.,* Attorney Weiler and the Eazor estate. It further contends that the Superior Court's decision contravenes public policy because under its holding, a firm representing a client who had been previously represented would be subject to direct contractual claims arising from agreements entered into between previous counsel and his employer law firm, to which the successor firm was potentially unaware and not a party. Malone Middleman submits that while liability may be warranted with respect to departing partners of a law firm under the UPA, there is no basis for successor firm liability where the tether of fiduciary duties is lacking. Accordingly, Malone Middleman requests that we reverse the Superior Court's judgment in favor of Meyer Darragh on the breach of contract claim.

In response, Meyer Darragh contends that the Superior Court properly relied upon *Ruby* to hold that its valid, pre-existing contract with Attorney Weiler was enforceable against Malone Middleman. It posits that, pursuant to *Ruby,* when Malone Middleman hired Attorney Weiler, it became bound by all the terms and conditions of the contract previously entered into between Attorney Weiler and Meyer Darragh, and all duties attendant thereto. Consistent with the Superior Court's analysis, Meyer Darragh interprets *Ruby* as grounded in equitable principles of contract interpretation, rather than

being exclusively based upon the UPA and the fiduciary duties created thereunder. It finds inconsequential that *Ruby* involved a partner to a law firm who brought the underlying case to the successor law firm, rather than an employee of the predecessor law firm (with no equity in the firm), as occurred here. This distinction, Meyer Darragh contends, merely eliminates the need for consideration of the UPA in the resolution of this case because Attorney Weiler was not a partner of Meyer Darragh and, thus, the Eazor estate litigation did not constitute "unfinished business" of a partnership.

Thus, rather than an improper expansion of the holding in *Ruby*, Meyer Darragh views the Superior Court's decision as merely an application of principles of equity, fairness and contract interpretation as espoused in *Ruby*. Meyer Darragh posits that Attorney Weiler could not transfer to Malone Middleman a greater right to the contingent fee from the Eazor estate litigation than he, himself, possessed under the terms of his agreement with Meyer Darragh. It submits that because Malone Middleman has refused to honor the terms of the contract at issue (to which it was not a party), the Superior Court properly determined that Meyer Darragh established a claim for breach of contract.

Absent citation to governing legal authority, Meyer Darragh offers three additional arguments in support of the proposition that Malone Middleman is bound by the fee distribution agreement previously entered into between Attorney Weiler and Meyer Darragh. First, notwithstanding that illness prevented Attorney Weiler from ever working for Malone Middleman, Meyer Darragh contends that Attorney Weiler acted as the agent of Malone Middleman, thereby rendering Malone Middleman, as principal, bound by Attorney Weiler's prior agreements. Second, Meyer Darragh relies on a federal district court decision in *Berger & Montague, P.C. v. Scott & Scott, LLC*, 153 F.Supp.2d 750, 753–54 (E.D.Pa.2001), for the proposition that Pennsylvania attorneys may pursue other attorneys and/or firms for breach of their fee distribution contract where the successor firm failed to pay the predecessor firm its share of the contingency fee. Finally, Meyer

Darragh analogizes the instant case to a landlord/tenant scenario, surmising that because a lease is a contract allegedly obligating a subsequent purchaser to the terms and conditions of the preexisting lease/contract, so too should Malone Middleman become bound by Attorney Weiler's previous contracts when it hired him.

In its reply brief, Malone Middleman reiterates that the fatal flaw in Meyer Darragh's quest for breach of contract damages is that it failed to sue the party with whom it contracted, *i.e.*, Attorney Weiler. It echoes its previous argument that *Ruby* is distinguishable as it was decided exclusively under the provisions of the UPA, and not under "equitable principles of contract interpretation" as argued by Meyer Darragh. Moreover, Malone Middleman contends there is no merit to the contention that it is liable under an agency theory as Meyer Darragh has failed to cite a single case which supports this extraordinary contractual claim and it was stipulated that illness prevented Attorney Weiler from ever working for the firm. Proposed Stipulated Facts at Paragraph 48. It also refutes Meyer Darragh's reliance on the *Berger* decision, which is nonbinding and distinguishable, as it involved the interpretation of a fee agreement entered into between the predecessor and successor law firm, a fact that is absent here.

Lastly, Malone Middleman contends the analogy to landlord/tenant law is inapt, regardless of whether possessory rights of tenants to real estate are enforced against subsequent owners of real estate. To the contrary, it submits, Meyer Darragh did not have a possessory right to any contingency fees when Malone Middleman commenced representation of the Eazor estate. Malone Middleman asserts that when a client discharges counsel and severs the contractual relationship, any recovery of a contingency fee must be based on the nature of the work performed up to that point; where the contingency has not occurred, the fee has not been earned. Here, Malone Middleman concludes, because settlement had not yet been reached when it began representing the Eazor estate, Meyer Darragh's only right to fees would have been through a *quantum meruit* action or via its contract with

Attorney Weiler. It argues that Meyer Darragh declined to pursue a breach of contract action against Attorney Weiler, abandoned its *quantum meruit* claim against the Eazor estate before the trial court, and abandoned its *quantum meruit* claim against Malone Middleman by failing to appeal to this Court the Superior Court's adverse ruling on that claim.[9] Accordingly, Malone Middleman suggests that Meyer Darragh's abandonment of its available claims cannot create "unfairness" that warrants the remedy of damages on an unrelated and unsupportable claim for breach of contract.

Upon consideration of the parties' arguments, we agree with Malone Middleman as we conclude that the Superior Court erroneously extended the application of its previous decision in *Ruby* to circumstances where there was no partnership between the predecessor law firm and the departing attorney. We further hold that none of the alternative theories proffered by Meyer Darragh entitle it to damages for breach of contract.

Our analysis begins with a review of *Ruby*. In that case, Attorney Keith Erbstein was a partner at the Beasley Firm LLC ("Beasley") who entered into an employment agreement, in which he agreed to reimburse Beasley any outstanding costs and pay seventy-five percent of any fees recovered should he leave the firm for any reason. *Ruby*, 50 A.3d at 130. During his employment, Attorney Erbstein brought a negligence case into the firm involving the estate of Kathleen A. Ruby, and the estate signed a contingency fee agreement with Beasley and Attorney Erbstein.

When Attorney Erbstein was later released from Beasley's employ, after enjoying the status of partner there, he accepted a position with the law firm of Young, Ricchiuti, Caldwell & Heller ("Young"). Upon learning of Attorney Erbstein's departure, the Ruby estate discharged Beasley, and signed a new contingency fee agreement with Attorney Erbstein and Young. The underlying case ultimately settled and litigation arose between Beasley and Young regarding apportionment of

9. Meyer Darragh does not attempt to resurrect its *quantum meruit* claim against Malone Middleman in its brief to this Court.

attorney's fees. The trial court ruled in favor of Beasley, holding that its employment agreement with Attorney Erbstein restricted Young's recovery of attorney's fees.

On appeal, Young contended that it was not legally bound by the fee-sharing agreement between Attorney Erbstein and Beasley because it was not a party to the contract. The Superior Court in *Ruby* affirmed the trial court's ruling, viewing the issue as "not whether [Young] is bound by the employment agreement [between Beasley and Attorney Erbstein], but whether, and to what degree, may [Young] take a share of the attorneys' fees subject to the employment agreement." *Id.* at 132 (emphasis in original). As no Pennsylvania case had addressed the issue, the *Ruby* court relied upon and adopted the analysis of the California Court of Appeals in *Rosenfeld, Meyer & Susman v. Cohen,* 146 Cal.App.3d 200, 194 Cal.Rptr. 180 (1983), *overruled on other grounds, Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994), which held that departing partners breached their fiduciary duty to their former law firm when they continued representation of the firm's client following departure, thereby entitling the firm to a share of the attorney's fees from the "unfinished business" performed by the departing partners.[10] The *Ruby* court stated, "we agree with the sound reasoning of the California Court of Appeals and adopt the same, insofar as it applied

10. The appeal in *Rosenfeld* involved three causes of action that the law firm brought against the departing partners: (1) breach of fiduciary duty; (2) interference with contractual relations; and (3) conspiracy to interfere with contractual relations. The Superior Court in *Ruby* relied upon the *Rosenfeld* court's analysis of the breach of fiduciary duty claim. The Superior Court in *Ruby* also relied upon the California Court of Appeal's decision in *Jewel v. Boxer,* 156 Cal.App.3d 171, 203 Cal.Rptr. 13 (1984), which involved an application for an accounting of attorney fees arising from unfinished business of a dissolved law partnership. The *Jewel* court held that, absent a contrary agreement, income generated through the winding up of unfinished business (including contingent attorney fees arising from cases unresolved on the date of partnership dissolution) is allocated to the former partners according to their respective interests in the partnership. *Id.* at 176, 203 Cal.Rptr. 13.

identical statutory provisions of the Uniform Partnership Act to facts similar or identical to our own." *Ruby*, 50 A.3d at 132.

The *Ruby* court explained that the concept of unfinished business is based upon the premise that the dissolution of a partnership does not terminate the partnership, but rather it continues for the limited purpose of winding up its affairs and completing all unfinished business, and the partners continue to owe each other fiduciary duties until the winding up process is complete. *Id.* at 133 (referencing the following provisions of the UPA: 15 Pa.C.S. § 8351 (defining "Dissolution"); § 8352 (Partnership continued for winding up affairs), and § 8355 (Effect of dissolution on authority of partner)).[11]

Applying such construct, the court held that because litigation on the *Ruby* estate case had not yet resolved when Attorney Erbstein left the firm, the matter constituted "unfinished business" of the partners of the law firm. Consequently, the court reasoned that Attorney Erbstein and Young could not cut off the Beasley partners by entering into a new contract with the Ruby estate to complete litigation of the case. Accordingly, the Superior Court in *Ruby* concluded that Young, as the successor law firm, "may only take its share of the attorneys' fees subject to the terms of the employment agreement [entered into between Attorney Erbstein and Beasley]." *Id.* at 135.[12]

Thus, as argued by Malone Middleman, the *Ruby* decision was based exclusively upon the fiduciary duty owed by a departing partner under the UPA to the predecessor law firm

11. The UPA defines the "dissolution of a partnership" as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business." 15 Pa.C.S. § 8351. The UPA explains that dissolution does not mean that a partnership is terminated, but rather the partnership "continues until the winding up of partnership affairs is completed." 15 Pa.C.S. § 8352. Our opinion in the instant case does not address the intricacies of dissolution or termination of a partnership as no partnership existed between Meyer Darragh and Attorney Weiler.

12. More precisely, the Superior Court's discussion in *Ruby* focused on the successor law firm taking its share of attorney's fees subject to the rights of the remaining Beasley partners upon the departure of Attorney Erbstein.

during the winding up process of a dissolving partnership, which is absent in the instant case. Here, Attorney Weiler was not a partner at Meyer Darragh and, thus, the Eazor estate litigation did not constitute unfinished business of a partnership. Accordingly, the Superior Court erred by extending the rationale of *Ruby* to a case where the departing attorney was not a partner of the original law firm.

 Moreover, Meyer Darragh has set forth no other viable basis for recovery regarding its breach of contract claim. It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages. *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa.Super.2002). "Additionally, it is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." *Id.* Meyer Darragh has failed to demonstrate, by any means, the existence of a contract between its law firm and Malone Middleman. *See Electron Energy Corp.*, 597 A.2d at 177 (holding that "[i]t is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract").

Further, Meyer Darragh's claim that it is entitled to breach of contract damages under agency law is unpersuasive. "Under the law of agency a contract made by an agent acting within the scope of its delegated authority is considered a contract of the principal." *Pennsylvania Federation of Teachers v. School District of Philadelphia*, 506 Pa. 196, 484 A.2d 751, 753 (Pa.1984). Here, however, the contract at issue (*i.e.,* the contingency fee agreement between Meyer Darragh and Attorney Weiler) was entered into before Attorney Weiler had any affiliation with Malone Middleman and, thus, could not have been made within the scope of any authority delegated to him by Malone Middleman.[13] Likewise unavailing is

13. As pointed out by Malone Middleman, the basic premise that Attorney Weiler acted as the agent of Malone Middleman is suspect, considering he never worked for that firm because he became ill prior to commencing employment. Proposed Stipulated Facts at Paragraph 48.

Meyer Darragh's reliance upon a nonbinding federal district court case granting the predecessor law firm attorney's fees against the successor law firm based on a contract entered into between the two firms—a factual predicate lacking in this breach of contract action. *See Berger & Montague, P.C., supra* at 753–54.

█ Finally, we reject Meyer Darragh's analogy that the instant case is akin to landlord/tenant jurisprudence, which, it maintains, recognizes that possessory rights of tenants to real estate are enforced against subsequent owners of real estate. Aside from failing to cite any governing authority applying such law to attorney fee disputes, Meyer Darragh fails to acknowledge that it held no possessory right to contingent fees relating to the Eazor estate litigation at the time the clients discharged the firm from the case, as no settlement had yet been realized. It is well-settled in this Commonwealth that:

> [a] client may terminate his relation with an attorney at any time, notwithstanding a contract for fees, but if he does so, thus making performance of the contract impossible, the attorney is not deprived of his right to recover on a *quantum meruit* a proper amount for the services which he has rendered.

*Mager v. Bultena*, 797 A.2d 948, 956 (Pa.Super.2002) (quoting *Sundheim v. Beaver Cnty. Bldg. & Loan Ass'n*, 140 Pa.Super. 529, 14 A.2d 349, 351 (1940)).

Consistent with this jurisprudence, we hold that under the specific facts presented, any recovery that may have been due to Meyer Darragh would lie in *quantum meruit*, and not breach of contract.

Accordingly, we reverse the order of the Superior Court, which entered judgment in favor of Meyer Darragh on the breach of contract claim.

Chief Justice SAYLOR and Justices DONOHUE, DOUGHERTY and WECHT join the opinion.

Chief Justice SAYLOR files a concurring opinion in which Justice DOUGHERTY joins.

Justice TODD files a concurring opinion.

Chief Justice SAYLOR, concurring.

I join the majority opinion and write to address the following concerns pertaining to the *quantum meruit* aspect of this litigation.

Relying on its precedent, the Superior Court indicated a predecessor law firm may only proceed under a *quantum meruit* theory against its former client, but not against a successor law firm. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, PC*, 95 A.3d 893, 897 (Pa.Super.2014) (citing, *inter alia, Mager v. Bultena*, 797 A.2d 948 (Pa.Super.2002), and *Fowkes v. Shoemaker*, 443 Pa.Super. 343, 661 A.2d 877 (1995)); *see also id.* at 898 ("Until our supreme court holds otherwise, we will not recognize a claim for *quantum meruit* by a former attorney against a subsequent attorney." (bolding omitted)). The difficulty, as I see it, is that this puts the client in an untenable position where, as here, the client has already paid the attorney fee in full to the successor law firm. In this regard, and as the majority notes, *quantum meruit* is an equitable doctrine. *See* Majority Opinion, at 433 n. 4, 137 A.3d at 1250 n. 4. As such, I would be particularly cautious about a *quantum meruit* framework under which an excessive payment obligation was ultimately imposed upon the client.[1]

I am also circumspect concerning the degree to which the present decision may be construed as suggesting, if only implicitly, that Meyer Darragh has abandoned its *quantum meruit* claim by failing to raise it in its brief or by not filing a protective cross-petition for allowance of appeal. *See, e.g., id.*

1. Notably, a number of other jurisdictions have applied the *quantum meruit* principle to disputes between successive attorneys in contingency-fee cases. *See, e.g., Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 287 P.3d 842, 847 (Colo.2012); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So.2d 366, 368 (Fla.1995); *Nunn Law Office v. Rosenthal*, 905 N.E.2d 513, 519 (Ind.Ct.App.2009); *Somuah v. Flachs*, 352 Md. 241, 721 A.2d 680, 688 (1998); *Reynolds v. Polen*, 222 Mich.App. 20, 564 N.W.2d 467, 471 (1997).

at 436, 137 A.3d at 1252 ("Meyer Darragh did not seek allowance of appeal from the Superior Court's denial of *quantum meruit* relief."); *id.* at 442 n. 9, 137 A.3d at 1256 n. 9 ("Meyer Darragh does not attempt to resurrect its *quantum meruit* claim against Malone Middleman in its brief to this Court."). Litigants are generally discouraged from briefing issues not accepted for review. In a decision announced shortly before Malone Middleman petitioned for review, moreover, this Court reaffirmed that protective cross-appeals are disfavored and that "a successful litigant need not file a protective cross-appeal on pain of waiver." *Lebanon Valley Farmers Bank v. Commonwealth,* 623 Pa. 455, 464, 83 A.3d 107, 113 (2013); *see also Basile v. H & R Block, Inc.,* 601 Pa. 392, 399, 973 A.2d 417, 422 (2009) ("An appellee should not be required to file a cross appeal because the Court below ruled against it on an issue, as long as the judgment granted Appellee the relief it sought" (quoting Pa.R.A.P. 511, Note)). Presently, Meyer Darragh prevailed at the common pleas level on its *quantum meruit* claim and obtained a verdict of more than $14,700. *See Meyer, Darragh, Buckler, Bebenek & Eck v. Law Firm of Malone Middleman, PC,* No. AR10–007964, Non–Jury Verdict (C.P. Allegheny July 25, 2012), *reproduced in* R.R. 335a. In the Superior Court, although that theory for recovery was disapproved, an alternate—and mutually exclusive—legal theory, giving Meyer Darragh an even larger recovery, was endorsed in a ruling which this Court now reverses.

It is possible that, in electing not to file a cross-petition for allowance of appeal, Meyer Darragh relied to its detriment upon this Court's pronouncements in *Lebanon Valley* and *Basile.*[2] Thus, my present joinder should not be construed as foreclosing Meyer Darragh's ability to request *nunc pro tunc* relief in the form of leave to cross-petition for allowance of appeal in light of today's holding.

Justice DOUGHERTY joins this concurring opinion.

---

**2.** It is simply not clear how *Lebanon Valley's* guidance translates into scenarios, such as this, where remedies are mutually exclusive, and into the discretionary appeals context, where the Court is generally confined according to the issues accepted for review.

Justice TODD, concurring.

I join the Majority Opinion except for the following point. The majority does not address the dilemma, but I fully agree with the expressions of Chief Justice Saylor regarding the predicament in which Meyer Darragh finds itself concerning the *quantum meruit* issue. *See* Concurring Opinion (Saylor, C.J.) at 447–48, 137 A.3d at 1259–60. Therefore, having prevailed below, and given our admonitions in *Lebanon Valley Farmers Bank v. Commonwealth,* 623 Pa. 455, 83 A.3d 107, 113 (2013), against successful litigants filing protective cross appeals, I would expressly permit Meyer Darragh to file a *nunc pro tunc* cross petition for allowance of appeal within 30 days of our decision herein. Further, I would refer to the Appellate Rules Committee the question of amendments to our appellate rules which account for the impact of *Lebanon Valley* in the procedural context of this case.