J-A24025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JRA INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SPRINGFIELD REALTY PARTNERS, | : | No. 3154 EDA 2022 |
| L.P., PENNSYLVANIA CVS | : | |
| PHARMACY, L.L.C. AND CVS HEALTH | : | |
| CORPORATION | : | |

Appeal from the Order Entered November 22, 2022
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2020-003245

BEFORE:  STABILE, J., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 25, 2024**

Appellant JRA, Inc. appeals from the November 22, 2022 order entered by the Delaware County Court of Common Pleas, granting the motion for summary judgment filed by Appellees Pennsylvania CVS Pharmacy, L.L.C., and CVS Health Corporation and joined by Appellee Springfield Realty Partners, L.P. and Intervenor Provident Bank.  In so doing, the court dismissed with prejudice Appellant's complaint filed in this commercial landlord-tenant action.  After careful consideration, we affirm.

The factual and procedural history are as follows.  On May 21, 1999, Appellant JRA, Inc. ("Landlord") and Appellee Springfield Realty Partners, L.P. ("Tenant") entered into a commercial ground lease ("Lease").  Relevantly, the Lease defined an "Event of Default" as including "a failure by Tenant to

make . . . any payment of Basic Rent which continues unremedied for a period of five (5) days after written notice ("Nonpayment Notice") thereof from Landlord . . . ." Lease at ¶ 19. The Lease additionally mandated that all notices and requests be in writing and provided by registered mail, certified mail, or air courier service to the specific addresses listed.[1] *Id.* at ¶ 21.

Also in May 1999, Appellee CVS Health Corporation ("Guarantor") executed a Corporate Guarantee, through which it assumed responsibility under the Lease in the event of Tenant's default. The Corporate Guarantee stated that Guarantor would pay the rent due in addition to "all damages and all costs and expenses that may arise in consequence of any default by Tenant under the Lease" "after the expiration of any applicable cure period after any required notice." Corporate Guaranty, dated 5/21/1999, at 1. In August 1999, Tenant subleased the property to the predecessor in interest of Appellee Pennsylvania CVS Pharmacy L.L.C. ("Subtenant").

In March 2000, Landlord and Tenant signed an amendment to the Lease, which included a provision instructing Tenant to make monthly payments to Landlord's mortgage lender ("Landlord's Lender"). Second Amendment to Lease, dated 3/14/2000, at ¶ 12. On April 14, 2000, in conjunction with the amendment, Landlord, Tenant, and Subtenant entered into an agreement ("Letter Agreement") which directed Subtenant to make each rent payment

---

[1] Paragraph 21 provided specific addresses for Landlord and Tenant and mandated that all notices to Tenant be sent "c/o Goodman Properties" "[w]ith a copy to" Tenant's counsel and CVS Corporation. *Id.* For ease of discussion, we will utilize the term "Tenant" to include Goodman Properties.

to Landlord's Lender. It further provided, "Landlord, Tenant and Subtenant have agreed that this notification of the payment of rent may not be modified or revoked without [Landlord's] Lender's written authorization." Letter Agreement at 2.

Also in April 2000, Landlord and Subtenant executed a Non-Disturbance and Attornment Agreement ("NDA"), to which Tenant consented. The NDA required Landlord "to give Subtenant and [Guarantor] written notice of any default" under the Lease and provide Subtenant and Guarantor the same opportunity to cure the default as provided to Tenant under the Lease. NDA, April 4, 2000, at ¶ 4. Indeed, the NDA specified that no "notice of default shall be deemed given to [Tenant] unless and until a copy of such notice shall have been delivered to Subtenant and [Guarantor]." *Id.* Moreover, the NDA mandated that "[a]ny notice, election, communication, request or other document or demand required or permitted under this Agreement shall be in writing[.]"[2] *Id.* at ¶ 11.

In September 2018, Tenant entered into a Leasehold Mortgage with Provident Bank ("Tenant's Bank"), as permitted under Paragraph 35 of the Lease. Under Paragraph 35 of the Lease, Landlord agreed to "simultaneously serve" the holder of a leasehold mortgage with a copy of "any notice of

---

[2] The paragraph indicated a specific address for notices to Subtenant "with a copy to" a specific address for Guarantor. Neither address included an email address. *Id.*

default" served on Tenant and provide the holder with the same period to remedy the default as provided to Tenant. Lease at ¶ 35(b).

For approximately twenty years, Subtenant paid rent as required to Landlord's Lender.

On April 6, 2020, Landlord's vice president emailed Tenant's leasing representative to inform her that Landlord had paid off the mortgage with Landlord's Lender and to request that all future rent payments be made directly to Landlord. In the weeks following the initial email, Landlord's vice president repeatedly communicated with Tenant's representatives attempting to secure the change in payment instructions.

Landlord did not provide direct written notice from Landlord to Subtenant requesting a change in payment method prior to the May 1, 2020 due date. Landlord also did not provide written authorization from Landlord's Lender of the change in payment method as required by the April 2000 Letter Agreement.

On May 1, 2020, Subtenant paid rent to Landlord's Lender, which rejected it on May 6, 2020, as the account had been closed after Landlord paid off the mortgage.

On May 5, 2020, Landlord's vice president emailed Guarantor's lease administration manager, Tenant's leasing representative and Tenant's senior property coordinator attaching a "formal letter for your file[.]" Email of John Rhodes, 5/5/2020. The attached letter, addressed to Guarantor and Tenant, stated that it was "a formal notice to you demanding you make immediate

payment of the May 2020 rent in the amount of $40,416.66 that was due May 1, 2020" as well as $1,458.33 resulting from a base rent adjustment for the second half of April ("Emailed Demand Letter"). The Emailed Demand Letter further stated that Landlord "would appreciate that the monthly payments be made on the first day of each month going forward" and provided instructions for wiring funds to Landlord. *Id.* Notably, the Emailed Demand Letter did not include the term "default," address the five-day cure period, or threaten legal action.

On the same day, Landlord also sent a nearly identical Demand Letter via Federal Express to Guarantor and Tenant, which differed only due to the addition of Tenant's counsel as an addressee ("Mailed Demand Letter"). Importantly, there is no indication in the record that Landlord provided the Emailed or Mailed Demand Letter to Subtenant.

We emphasize that eleven days later, on May 16, 2020, Landlord filed a Complaint against Tenant, Subtenant, and Guarantor (collectively "Defendants"), claiming breach of the Lease for failure to pay rent. Landlord sought (1) to collect from Tenant rent and other damages, including attorneys' fees; (2) to eject Tenant and Subtenant; and (3) to collect from Guarantor rent and other damages, including attorneys' fees.[3]

Ten days later, on May 26, 2020, Tenant paid the rent directly to Landlord. Indeed, by June 1, 2020, Subtenant and Tenant's Bank had also

---

[3] In August 2020, Tenant's Bank sought intervention, which the trial court granted in March 2021.

sent the rent payment to Landlord.[4] The Defendants, however, did not pay the attorney fees and costs Landlord claimed it incurred to collect the past-due rent, which Landlord claims currently totals in the "hundreds of thousands of dollars[.]" Landlord's Br. at 23. Although the rent was now fully paid, Landlord continued this litigation. [5]

On July 27, 2022, Subtenant and Guarantor filed a Motion for Summary Judgment, which Tenant and Tenant's Bank joined. On September 8, 2022, Landlord responded and filed a cross-motion for summary judgment.

On November 22, 2022, following oral argument on November 3, 2022, the trial court granted summary judgment to Defendants. It first concluded that Landlord could not prove breach of the Lease "because Landlord failed to comply with the notice requirements set forth in the parties' agreements, [such that] Tenant had no opportunity to cure any purported default by Subtenant." Trial Ct. Op., 3/27/23, at 13-14. The court highlighted that "the purported notice was not provided at all to Subtenant[.]" *Id.* at 14. Secondly, the court concluded that, absent breach of the Lease, Landlord was "not entitled to eject" the Defendants from the property. *Id.* at 16. Finally, based

---

[4] Landlord subsequently refunded the rent paid by Tenant's Bank and Tenant.

[5] Although we analyze this appeal on the basis of the various agreements, we question Landlord's tactics in filing a complaint when Subtenant paid the rent to Landlord's Lender as the documents required and Landlord failed to notify Subtenant to pay the May 2020 rent to Landlord. Indeed, Landlord still filed a complaint less than a month later, continued to pursue this litigation even after Tenant paid the May 2020 rent on May 26, 2020, and now claims a right to hundreds of thousands of dollars in attorney fees.

upon the same reasoning, the court held that Landlord could not prove breach of contract by Guarantor absent proper notice of default. *Id.* at 17. Accordingly, the court granted summary judgment to Defendants on all three counts of the Complaint, denied Landlord's cross-motion for summary judgment, and dismissed Landlord's complaint with prejudice.

On December 15, 2022, Landlord filed its notice of appeal to this Court, after which, the trial court and Landlord complied with Pa.R.A.P. 1925.

Landlord raises the following issues on appeal:

1. Did the [t]rial [c]ourt [err] by finding [Landlord] failed to comply with notice requirements under the governing agreements as to [Tenant], [Subtenant,] and [Tenant's Bank] warranting the entry of summary judgment against [Landlord] and the denial of [Landlord's] cross-motion for summary judgment?

2. Did the [t]rial [c]ourt [err] in ostensibly excusing the nonpayment of rent by [Tenant] and [Subtenant] based on some "obligation" to continue to pay the rent to [Landlord's] Lender even though the loan was repaid and the Lender had stopped accepting payments?

Landlord's Br. at 5 (suggested answers omitted).

## A.

As Landlord challenges the trial court's grant of summary judgment, we reiterate that "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Summers v. Certainteed Corp.,*** 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted). "An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." ***Nicolaou v. Martin***,

195 A.3d 880, 892 (Pa. 2018). The determination of whether any questions of material fact remain is a question of law, for which "our standard of review is *de novo*." **Summers**, 997 A.2d at 1159 (citation omitted).

In addressing a summary judgment motion, a court "must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court . . . may only grant summary judgment where the right to such judgment is clear and free from all doubt." **Id.** (citations and internal quotation marks omitted).

It is well-established that leases, such as those involved in the instant case, "are in the nature of contracts and are, thus, controlled by principles of contract law, including the well settled rules of interpretation and construction." **Fraport Pittsburgh, Inc. v. Allegheny Cnty. Airport Auth.**, 296 A.3d 9, 15 (Pa. Super. 2023). Our purpose in interpreting a lease is "to ascertain the intention of the parties, and such intention is to be gleaned from the language of the lease." **Id.** To establish a cause of action for breach of contract, a party must demonstrate "(1) the existence of a contract, including its essential terms, (2) a breach of the contract[, and] (3) resultant damages." **Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.,** 137 A.3d 1247, 1258 (Pa. 2016).

**B.**

Landlord argues that the trial court erred in finding that Landlord could not demonstrate default under the Lease because Landlord did not provide the requisite notice of default. Landlord's Brief at 21-23. Landlord maintains that

its communications to the Defendants provided each with "actual notice" of the default, emphasizing that the entities were all "sophisticated business entities[.]" *Id.* at 21-22. Landlord asks this Court to reverse the grant of summary judgment and direct the trial court to grant summary judgment to Landlord and to address Landlord's ejectment request and assess damages, including attorney fees. Alternatively, it requests that this Court reverse summary judgment and remand for trial. *Id.* at 40.

After careful consideration, we conclude that the trial court correctly granted summary judgment to Defendants because Landlord failed to establish a breach of the Lease. Trial Ct. Op. at 13-16. As the trial court noted, the Lease established that an Event of Default occurred only if Tenant failed to remit payment after Landlord provided written notice and a five-day opportunity to cure. Moreover, the NDA provided that Tenant would not be deemed to have received the requisite notice of default until Landlord provided both Subtenant and Guarantor with notice of default. While Landlord emailed and mailed the demand letter to Guarantor or Guarantor's representative, the record does not include any evidence that Landlord provided the notice to Subtenant. Trial Ct. Op. at 14. Absent the requisite notice of default to Subtenant, Landlord cannot establish a breach by Tenant.[6] We additionally

---

[6] The trial court additionally identified several technical deficiencies related to the addresses to which Landlord sent the Mailed Demand Letter as well as the Landlord's failure to provide written authorization from Landlord's Lender regarding the change in payment method as required by the April 2000 Letter
*(Footnote Continued Next Page)*

- 9 -

emphasize that the Mailed and Emailed Demand Letters failed to provide sufficient notice of default as they did not include the word "default" or reference the five-day cure period.

Absent the requisite notices of default and opportunity to cure, Landlord cannot establish that Defendants breached the Lease.[7] Accordingly, we affirm the trial court's grant of summary judgment to Defendants, its denial of summary judgment to Landlord, and the dismissal of Landlord's complaint.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/25/2024

---

Agreement.   Trial Ct. Op. at 13-15.   We do not address these other deficiencies.

[7] As we conclude that the trial court properly granted summary judgment based upon the failure to provide the requisite notice of default, we do not address Landlord's second question challenging the trial court's reliance on Landlord's failure to provide written authorization from Landlord's Lender for a change in payment methods pursuant to the April 2000 Letter Agreement.